IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 30, 2011

## STATE OF TENNESSEE v. WILL ROGERS SALMON

**Direct Appeal from the Circuit Court for Sevier County**
**No. 14782-II      Richard R. Vance, Judge**

**No. E2011-00397-CCA-R3-CD - Filed October 6, 2011**

The defendant, Will Rogers Salmon, pled guilty in the Sevier County Circuit Court to DUI, first offense, and violation of the implied consent law and was sentenced to eleven months, twenty-nine days in the county jail, suspended to supervised probation following the service of forty-eight hours. As a condition of his guilty pleas, the defendant attempted to reserve the following two certified questions of law: (1) whether reasonable suspicion, based on specific and articulable facts, justified his traffic stop and detention; and (2) whether the arresting officer's intrusion into his vehicle constituted a custodial environment that required the suppression of any post-arrest statements pursuant to Miranda v. Arizona. 384 U.S. 436 (1966). Based on our review, we agree with the State that the trial court properly found that the traffic stop and detention were justified. We further agree that the defendant's second certified question of law is not dispositive of his case and, thus, is not properly before this court. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Bryan E. Delius (on appeal and at trial) and Bryce W. McKenzie (on appeal), Sevierville, Tennessee, for the appellant, Will Rogers Salmon.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. turner, Senior Counsel; James B. Dunn, District Attorney General; and Gregory C. Eshbaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

At approximately 4:15 a.m. on January 25, 2009, Sevierville Police Officer Matt Nicol responded to the intersection of Veteran's Boulevard and Middle Creek Road in response to a report of a possible sleeping driver. Upon his arrival, he found in the left turn lane a Ford Explorer with its turn signal activated and its gear shift in park. The defendant, who was slumped over and appeared asleep, was in the driver's seat of the vehicle. After repeatedly rapping on the driver's window, Officer Nicol finally succeeded in rousing the defendant, who unlocked the driver's door. At that point, Officer Nicol reached into the vehicle, removed the keys from the ignition, and placed them on top of the vehicle. The defendant, who admitted that he had been drinking alcohol earlier in the evening, failed several field sobriety tests and refused to submit to a blood alcohol test.

The defendant was indicted for DUI, first offense, and violation of the implied consent law. He subsequently filed a motion to suppress his statements to Officer Nicol on the basis that the officer failed to warn him of his Miranda rights before questioning him about his drinking. In his written motion, the defendant acknowledged that the officer's "initial investigation . . . was appropriate" because he had "committed a traffic law violation in obstructing the roadway." However, following the officer's testimony at the suppression hearing, he sought and received permission to orally amend the motion to include a challenge to the traffic stop itself.

At the suppression hearing, Officer Nicol testified that he was dispatched to the area "in reference to a possible sleeping driver." When he arrived, he found a Ford Explorer sitting in the left turn lane with its blinker on and the defendant, who appeared to be asleep, sitting slumped over behind the steering wheel. He said that he placed the defendant under arrest after the defendant was unable to perform as directed on several field sobriety tests. Officer Nicol identified the videotape of his encounter with the defendant, which was admitted as an exhibit and played at the hearing.

On cross-examination, Officer Nicol testified that he ran the Explorer's tag and turned on his emergency lights before approaching the vehicle. He did not know who placed the call to the police about the possible sleeping driver, and he was unsure if the traffic light was green or red upon his arrival at the scene. He was also unsure whether the light cycled from green to red prior to the time he activated his emergency lights. He acknowledged that he reached into the vehicle to remove the keys from the ignition and that the defendant was not free to leave the scene. He further acknowledged that he questioned the defendant about his drinking before he read him his Miranda rights.

On redirect examination, Officer Nicol testified that he activated his blue lights to

warn approaching motorists that the lane was blocked and that he removed the keys from the defendant's ignition because he feared that the just-awakened defendant would become startled, throw the vehicle into drive, and take off without warning.

The trial court overruled the motion to suppress at the conclusion of the hearing, finding that, regardless of the color of the traffic light, the officer had a duty to stop and investigate because it was clear from both the testimony and the videotape that the defendant was slumped over the steering wheel of a stopped vehicle. The court further found that, once the officer suspected that the defendant might be under the influence, he performed the proper procedure of administering field sobriety tests.

## ANALYSIS

The defendant contends on appeal that the trial court erred in denying his motion to suppress all evidence obtained as a result of his allegedly illegal stop, seizure, and interrogation. He argues that the initial traffic stop was not supported by probable cause or a reasonable suspicion of criminal activity because the caller who reported a possible sleeping driver was anonymous and "Officer Nicol only observed a vehicle stopped at a red light with its left-hand blinker engaged." He further argues that his admissions to the officer were illegally obtained because Officer Nicol questioned him about his drinking after he had been seized but before advising him of his Miranda rights. The State responds that the officer was justified in approaching the defendant's vehicle under either his role as a community caretaker or under the reasonable suspicion standard. The State also contends that the second certified question of law is not properly before this court because there was ample evidence, apart from the defendant's admissions, in support of the convictions. We agree with the State.

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the application of the law to the facts found by the trial court is a question of law and is reviewed de novo. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)).

## I. Traffic Stop

Our courts have recognized the following three categories of police-citizen encounters: "(1) a full scale arrest which must be supported by probable cause; (2) a brief investigatory detention which must be supported by reasonable suspicion of criminal activity; and (3) a brief 'consensual' police-citizen encounter which requires no objective justification." State v. Williams, 185 S.W.3d 311, 315 (Tenn. 2006) (citations omitted).

The third category of police-citizen interactions "includes community caretaking or public safety functions." Id. This category of "[v]oluntary or 'consensual' encounters between police and citizens are not considered seizures and are not protected by the United States or Tennessee Constitutions." Id. Thus, "[g]enerally, an officer may approach an individual in a public place and ask questions without implicating constitutional protections, [s]o long as a reasonable person would feel free to disregard the police and go about his business." Id. (citations and internal quotation marks omitted).

The community caretaking interaction "becomes a seizure, thereby triggering a constitutional analysis of the police action, 'when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" Id. at 315-16 (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). A seizure without a warrant is presumed unreasonable, and evidence obtained as a result will be suppressed "unless the State demonstrates that the seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Nicholson, 188 S.W.3d 649, 656 (Tenn. 2006).

One of those exceptions is when an officer makes an investigatory stop based on reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry, 392 U.S. at 21; State v. Binette, 33 S.W.3d 215, 219 (Tenn. 2000). Reasonable suspicion is an objective standard and must be determined from the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417-18 (1981); see Ornelas v. United States, 517 U.S. 690, 696 (1996). If an officer observes a violation of a traffic law, the officer has an objective basis for stopping the vehicle. See, e.g., State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997); State v. Levitt, 73 S.W.3d 159, 173 (Tenn. Crim. App. 2001).

The trial court ruled that the initial encounter did not constitute a seizure but instead was "a proper exercise of [the officer's] duty to inquire into the safety" of the defendant. The court further found that, following that initial investigation, the officer had reasonable suspicion of criminal activity sufficient to warrant his detaining the defendant and requiring him to perform field sobriety tests. The evidence does not preponderate against these

-4-

findings. Officer Nicol, who had been dispatched in response to a report of a possible sleeping driver, arrived on the scene to find a stationary vehicle in the left turn lane of traffic with the driver of the vehicle slumped over in his seat. From the videotape of the encounter, it is clear that it took the officer several minutes to rouse the defendant, who appeared groggy and disoriented when he finally opened the door. When asked why he was sitting in the turn lane with his vehicle in park, the defendant was unable to offer any explanation.

The defendant argues that Officer Nicol lacked reasonable suspicion to stop or detain him because all the officer observed when he arrived at the scene was a driver slumped over in a vehicle at a red light. He asserts that the trial court "wholly ignored the [d]efendant's argument that the red light never changed and therefore Officer Nicol would be unable to determine whether the driver was incapacitated." The defendant, however, mis-characterizes the evidence. Officer Nicol's testimony was not that the light was red when he first approached the defendant's vehicle, but instead that he could not recall the color of the light and would have to view the videotape again to be able to answer the question. The videotape itself reveals that the light facing the defendant's vehicle was green as the officer pulled up behind the defendant's vehicle. Moreover, the light remained green throughout the next twenty-five or so minutes until it briefly cycled to red upon the arrival of the tow truck, which turned left from the cross street and pulled in front of the defendant's vehicle. By that time, the defendant had already been administered the field sobriety tests, handcuffed, and placed in the rear of the patrol vehicle. We conclude, therefore, that the trial court properly overruled the defendant's motion to suppress based on the alleged illegality of his stop and detention.

## II. Admissions to Police

The defendant next argues that his admissions about his drinking should have been suppressed because Officer Nicol questioned him before administering any Miranda warnings. Although the parties agreed that the second certified question was dispositive of the case, we are not bound by their determination, see State v. Thompson, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003), and instead "must make an independent determination that the certified question is dispositive." State v. Dailey, 235 S.W.3d 131, 135 (Tenn. 2007) (citing Sate v. Preston, 759 S.W.2d. 647, 651 (Tenn. 1988)). "An issue is dispositive when this court must either affirm the judgment or reverse and dismiss." State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). Because there is sufficient evidence, wholly apart from the defendant's admissions, in support of his convictions for DUI and violation of the implied consent law, we agree with the State that the issue is not dispositive and, therefore, not properly before this court.

## CONCLUSION

Based on our review, we conclude that the trial court properly overruled the defendant's motion to suppress evidence obtained as a result of his allegedly illegal stop and detention. We further conclude that the issue of whether the trial court erred in denying the defendant's motion to suppress his statements to police is not properly before this court. Accordingly, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE