STATE of Tennessee

v.

Kirk WILLIAMS.

Supreme Court of Tennessee,
at Knoxville.

Nov. 16, 2005 Session Heard
in Kingsport.[1]

March 13, 2006.

1. Oral argument was heard in this case on November 16, 2005, in Kingsport, Sullivan County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **Le**gal **E**ducation for **S**tudents) project.

Ardena J. Garth and Donna Robinson Miller, Chattanooga, Tennessee, for the appellant, Kirk Williams.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

We granted review to determine whether a seizure within the meaning of the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution occurs when a police officer activates the blue lights on his patrol car behind the defendant's vehicle which is already stopped and idling in the street. The trial court held that it was a seizure and that the officer did not have reasonable suspicion to seize the defendant. Therefore, the trial court suppressed all the evidence obtained as a result of that seizure. The Court of Criminal Appeals overruled the trial court, holding that there was no seizure. We hold that under the facts of this case, the defendant was seized at the moment when the officer pulled up behind the defendant's stopped vehicle and activated his blue emergency lights. We also hold that the officer did not have reasonable suspicion of criminal activity to justify his seizure of the defendant. As such, the decision of the Court of Criminal Appeals is reversed, and the decision of the trial court suppressing the evidence is reinstated.

## I.  Factual Background

As the result of a traffic stop that occurred on July 12, 2002, the defendant, Kirk Williams, was indicted for one count of driving under the influence and one count of obstructing a highway. The defendant filed a motion to suppress all the evidence obtained at that traffic stop. The evidence presented at the suppression hearing before the trial court is summarized below.

Chattanooga Police Officer Christopher Sims ("Sims") testified that on July 12, 2002, while performing a routine patrol, he observed the defendant's vehicle on East 18th Street. The vehicle was stopped with the engine running, blocking one lane of a two-lane road. No other vehicles were present. According to Sims, he pulled in behind the defendant's vehicle, activated his blue emergency lights "to make sure that [the defendant knew] my vehicle was there," and proceeded to investigate why the defendant was stopped in the roadway. As Sims approached the driver's side door, he smelled alcohol on the defendant, and therefore administered a field sobriety test. The defendant performed only one test; he refused the one-leg stand, stating that he was injured. Sims subsequently arrested the defendant for obstructing traffic and driving under the influence.

The defendant and his passenger, Jason Brooks, testified at the suppression hearing to facts substantially different than those to which Sims testified. On the evening of July 12, 2002, the defendant had been driving very slowly along East 18th Street. The defendant explained that he had been driving slowly because the speed limit was twenty miles per hour and there were "a lot of branches and stuff on the ground." Both the defendant and Brooks testified that they saw Sims turn off of Lyerly Street onto East 18th Street, driving towards them. Sims activated his blue emergency lights as he approached the defendant's vehicle. The defendant testified that he pulled over to the shoulder to allow the patrol car to pass. However, Sims pulled in front of the defen-

dant's vehicle, causing him to come to a complete stop. Both men stated that Sims pulled in front of the defendant's vehicle, blocking the defendant's path and requiring the defendant to stop. They also testified that Sims had activated his blue emergency lights prior to coming to a stop. When Sims approached, he asked why they were stopped in the middle of the road.

Following the hearing, the trial court suppressed the evidence obtained as a result of the seizure, holding that Officer Sims did not have reasonable suspicion that a crime had been committed by the defendant when he seized the defendant through activating the blue lights on his patrol car. The trial court observed:

> The police officer testified it was a two lane road ... and that [the defendant] was not blocking any traffic. I find under either scenario, either the State's version or the defendant's version of the facts, that there is no reasonable and articulable suspicion that a crime had occurred, was occurring, or was about to occur in this case. The motion to suppress is sustained.[2]

The State sought and received permission to appeal under Tennessee Rule of Appellate Procedure 9, as the trial court had not dismissed the underlying indictments following the order of suppression. The State, however, due to neglect and/or mistake, failed to file with the Court of Criminal Appeals an application for appeal under Rule 9 within thirty days, as required. Seven months after the order of suppression, the State filed an appeal with the Court of Criminal Appeals under Rule

3 of the Rules of Appellate Procedure, arguing that the substantive effect of the trial court's order of suppression was a dismissal of the indictment. Rule 3 provides for an appeal as of right by the State from an order or judgment "the substantive effect of which results in dismissing an indictment, information, or complaint...." Tenn. R.App. P. 3(c). The Court of Criminal Appeals agreed that the order of suppression was in fact dispositive and waived timely filing in the interest of justice. The defendant does not challenge the order of the Court of Criminal Appeals waiving the timely filing requirement.

The Court of Criminal Appeals reversed the trial court's decision, finding that the officer's encounter with the defendant did not constitute a seizure, and therefore, did not give rise to the protections guaranteed under the United States and Tennessee Constitutions. We granted the defendant's application for permission to appeal.

## II. Standard of Review

When evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, the court on appeal must uphold the trial court's findings of fact unless the evidence preponderates otherwise. *See State v. Ross*, 49 S.W.3d 833, 839 (Tenn.2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn.1996). In reviewing these factual findings, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. As such, "[t]he prevail-

---

**2.** When ruling on a motion to suppress, the trial court has an affirmative duty to state the essential findings of fact on the record. *See* Tenn. R.Crim. P. 12(e). This is necessary to aid in the appellate review. In this case, the trial court did not make specific findings of fact, but rather found that under either par-

ty's version of the facts, the evidence should be suppressed. This presents a situation on appeal that is far from ideal. However, in the interest of judicial economy, we will review the trial court's grant of the motion to suppress under both factual scenarios.

ing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter,* 16 S.W.3d 762, 765 (Tenn.2000) (quoting *State v. Keith,* 978 S.W.2d 861, 864 (Tenn.1998)). Our review of a trial court's application of law to the facts, however, is conducted under a de novo standard of review. *See Ross,* 49 S.W.3d at 839; *State v. Walton,* 41 S.W.3d 75, 81 (Tenn.2001).

### III. Analysis

■ The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." Article I, section 7 of the Tennessee Constitution similarly prohibits unreasonable searches and seizures, and we have long held that this provision is identical in intent and purpose to the Fourth Amendment. *See, e.g., State v. Binette,* 33 S.W.3d 215, 218 (Tenn.2000); *Sneed v. State,* 221 Tenn. 6, 423 S.W.2d 857, 860 (1968). The essence of this protection "is to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *State v. Randolph,* 74 S.W.3d 330, 334 (Tenn.2002) (quoting *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)).

### A. Seizure

■ Before we can address the issue of whether the stop of the defendant by the officer was reasonable, we must first determine whether the stop constituted a seizure.

Not all contact between police officers and citizens involves the seizure of a person under the Fourth Amendment of the United States Constitution or Article I, section 7 of the Tennessee Constitution. Courts have recognized three distinct types of police-citizen interactions: (1) a full scale arrest which must be supported by probable cause, *see United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); (2) a brief investigatory detention which must be supported by reasonable suspicion of criminal activity, *see Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and (3) a brief "consensual" police-citizen encounter which requires no objective justification, *see Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). This last category includes community caretaking or public safety functions. *See Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *State v. Hawkins,* 969 S.W.2d 936, 939 (Tenn.Crim. App.1997).

■ Voluntary or "consensual" encounters between police and citizens are not considered seizures and are not protected by the United States or Tennessee Constitutions. Generally, an officer may approach an individual in a public place and ask questions without implicating constitutional protections, "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business.'" *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382 (quoting *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)); *see also State v. Pulley,* 863 S.W.2d 29, 30 (Tenn.1993). Specifically, this Court has held that "[a] police officer may approach a car parked in a public place and ask for driver identification and proof of vehicle registration, without any reasonable suspicion of illegal activity." *Pulley,* 863 S.W.2d at 30.

■ A consensual police-citizen encounter becomes a seizure, thereby triggering a constitutional analysis of the po-

lice action, "when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. 1868. A different statement of the test was articulated in *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (plurality opinion), later adopted by a majority of the Supreme Court in *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), which states that a seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870; *see also State v. Daniel*, 12 S.W.3d 420, 425 (Tenn.2000). In other words,

> in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

*Bostick*, 501 U.S. at 439, 111 S.Ct. 2382; *see also Michigan v. Chesternut*, 486 U.S. 567, 572–73, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

The trial court held that under either the police officer's or the defendant's recitation of the facts, the defendant had been seized within the meaning of the United States and Tennessee Constitutions. If the defendant's statement of the facts is true—that his vehicle was moving when the officer activated the blue emergency lights, forcing the defendant to stop—then there is no doubt that the defendant was seized. It has been repeatedly held by the United States Supreme Court and this Court that the stop of an automobile and

the detention of its occupants constitutes a seizure. *See, e.g., Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (detention of individuals during the stop of an automobile constitutes a seizure); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn.2000) (motorist was seized because "[u]pon turning on the blue lights of a vehicle, a police officer has clearly initiated a stop and has seized the subject of the stop"); *Pulley*, 863 S.W.2d at 30 (vehicle was seized because, "[w]hen an officer turns on his blue lights, he or she has clearly initiated a stop").

However, at the suppression hearing, Officer Sims testified that the defendant's car was already stopped in the roadway before he approached and activated his emergency lights. The trial court held that this factual situation would likewise be a seizure of the defendant. While it is well settled that the activation of blue lights to stop a vehicle constitutes a seizure, *see, e.g., Binette*, 33 S.W.3d at 218; *Pulley*, 863 S.W.2d at 30, this Court has not addressed the specific issue of whether activating blue lights constitutes a seizure when a vehicle is already stopped.

The Court of Criminal Appeals has previously held, in *State v. Gonzalez*, 52 S.W.3d 90 (Tenn.Crim.App.2000), that a police officer initiates a seizure by turning on his blue lights behind a parked vehicle because the lights convey the message that the occupants are not free to leave. *Id.* at 97–98. The intermediate appellate court in this case, however, relied upon the unpublished case of *State v. Jensen*, No. E2002–00712–CCA–R3–CD, 2002 WL 31528549 (Tenn.Crim.App. Nov.15, 2002), without even a mention of *Gonzalez*, to hold that the police officer was engaged in his community caretaking function when he approached the defendant, making the interaction voluntary and not a seizure

within the meaning of the United States and Tennessee Constitutions.

We hold that the defendant's encounter with the officer was not voluntary, but rather occurred under a show of authority—the activation of the blue emergency lights—from which a reasonable person would not have felt free to leave. "Few, if any, reasonable citizens, while parked, would simply drive away and assume that the police, in turning on the emergency flashers, would be communicating something other than for them to remain." *Lawson v. State,* 120 Md.App. 610, 707 A.2d 947, 951 (Md.Ct.Spec.App.1998).

Most appellate courts considering the issue, under facts similar to those presented in this case, agree that a person in a parked vehicle is seized at the moment when the officer activates the emergency lights. *See, e.g., Hammons v. State,* 327 Ark. 520, 940 S.W.2d 424, 428 (1997) (defendant sitting in parked automobile was seized when police activated blue light; light was display of authority that would indicate to reasonable person he was not free to leave); *People v. Bailey,* 176 Cal. App.3d 402, 222 Cal.Rptr. 235, 236–37 (1985) (officer pulled in behind parked car and activated emergency lights; defendant seized as reasonable person would not have felt free to leave); *State v. Donahue,* 251 Conn. 636, 742 A.2d 775, 780 (1999) (defendant was seized at moment officers pulled up behind parked vehicle and switched on flashing lights); *Hrezo v. State,* 780 So.2d 194, 195 (Fla.Dist.Ct.App. 2001) (when a police officer turns on the emergency lights behind a lawfully parked vehicle, a reasonable person would expect to be stopped if he or she drove away); *People v. Laake,* 348 Ill.App.3d 346, 284 Ill.Dec. 203, 809 N.E.2d 769, 772 (2004) (police officer's use of emergency lights, directed at occupant of parked car, is reasonably interpreted as a command not to

leave); *State v. Morris,* 276 Kan. 11, 72 P.3d 570, 577 (2003) (defendant was seized at moment when officers pulled up behind his parked car and activated their emergency lights); *Lawson,* 707 A.2d at 951 (the activation of the emergency lights was a show of authority that constituted a seizure because it communicated to a reasonable person in the parked car that there was an intent to intrude upon the defendant's freedom to move away); *State v. Walp,* 65 Or.App. 781, 672 P.2d 374, 375 (1983) (use of emergency lights after defendant had voluntarily stopped was sufficient show of authority and reasonable person would not have felt free to leave); *State v. Burgess,* 163 Vt. 259, 657 A.2d 202, 203 (1995) (even if officer subjectively intends to activate his blue lights for safety reasons, the use of the lights on the defendant served as a restraint to prevent his departure from the pull-off area of the road); *Wallace v. Commonwealth,* 32 Va. App. 497, 528 S.E.2d 739, 741 (2000) (driver of parked vehicle seized because a reasonable person with a police cruiser parked behind him with its emergency lights flashing would not have felt free to leave); *State v. Stroud,* 30 Wash.App. 392, 634 P.2d 316, 318 (1981) (holding defendant seized at moment officers pulled up behind parked vehicle and switched on flashing lights). *But see, e.g., Commonwealth v. Evans,* 436 Mass. 369, 764 N.E.2d 841, 845 (2002) (an officer's use of blue emergency lights when pulling behind defendant's parked vehicle did not constitute a seizure because "the trooper was performing a community caretaking function, not investigating suspected criminal activity"); *State v. Hanson,* 504 N.W.2d 219, 220 (Minn.1993) (holding that the defendant in a parked car on side of the road was not seized by activation of emergency lights because a "reasonable person would have assumed that the officer was not doing

anything other than checking to see what was going on and to offer help if needed").

Not all use of the emergency blue lights on a patrol car will constitute a show of authority resulting in the seizure of a person. We realize that when officers act in their community caretaking function, they may want to activate their emergency equipment for their own safety and the safety of other motorists. As noted by the United States Supreme Court:

> [l]ocal police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detections, investigation, or acquisition or evidence relating to the violation of a criminal statute.

*Cady*, 413 U.S. at 441, 93 S.Ct. 2523.

However, there is nothing in this case to indicate that the officer was concerned that the defendant was in need of assistance. There was no evidence of an accident or other peril. In fact, the defendant's vehicle was the only vehicle in the area, so the use of the blue lights was directed solely at the defendant. Under such facts, a reasonable person would not feel free to leave due to the officer's show of authority. While the officer may have subjectively intended to activate his blue lights solely for his safety and the safety of others on the road, the litmus test is the objective belief of a reasonable person in the position of the defendant, not that of the officer. *See Chesternut*, 486 U.S. at 573, 108 S.Ct. 1975; *Daniel*, 12 S.W.3d at 425. Therefore, the defendant in this case was seized at the time the officer pulled up behind him and activated his emergency lights.

### B. Reasonable Suspicion

■ Having found that the defendant was seized, calling into play the protections of the United States and Tennessee Constitutions, we must now determine whether that seizure was reasonable.

■ The Fourth Amendment to the United States Constitution guarantees that "the right of the people to be secure ... against unreasonable searches and seizures shall not be violated and no warrants shall issue, but upon probable cause." Likewise, Article I, section 7 of the Tennessee Constitution guarantees "that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures...." Thus, the language of both the federal and state constitutions mandates that "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn.1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn.2003).

■ Though a warrant is normally required when a police officer intrudes upon the privacy of a citizen, there are exceptions to the warrant requirement. *See Garcia*, 123 S.W.3d at 343. One exception exists "when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *Binette*, 33 S.W.3d at 218 (citing *Terry*, 392 U.S. at 20–21, 88 S.Ct. 1868). Determining whether reasonable suspicion existed in a particular traffic stop is a fact-intensive and objective analysis. *See Garcia*,

123 S.W.3d at 344. " 'In determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances.' " *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn.1997) (quoting *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn.1992)); *see also Garcia*, 123 S.W.3d at 344. Accordingly, in the instant case, when Officer Sims seized the defendant by turning on his blue lights, he must have had reasonable suspicion, supported by specific and articulable facts, that the defendant had committed, or was about to commit, a criminal offense in order for the seizure to be constitutionally valid.

The trial court found that there was "no reasonable and articulable suspicion that a crime had occurred, was occurring or was about to occur." While the officer testified that he approached the defendant because he was stopped in the roadway, the officer also testified that it was a two-lane road and the defendant was not blocking any traffic. The relevant traffic violation—obstructing traffic—makes it a class C misdemeanor for a person who "[o]bstructs a ... street ... to which the public ... has access...." Tenn.Code Ann. 39–17–307(a)(1) (2003). For the purposes of that violation, " 'obstruct' means to render impassable or to render passage unreasonably inconvenient or potentially injurious to persons or property." Tenn.Code Ann. 39–17–307(b) (2003).

The trial court found that the defendant was not "obstructing" a street within the definition of the statute. Because the evidence does not preponderate to the contrary, we uphold the trial court's findings of fact. *See Odom*, 928 S.W.2d at 23. In light of the fact that the defendant was not obstructing traffic, Officer Sims could have had no reasonable suspicion that a crime either had been committed, was being committed, or was going to be committed. Therefore, the seizure was unreasonable, and the trial court correctly suppressed the evidence discovered as a result of that seizure.

## Conclusion

In sum, we hold that the defendant was seized by the officer when the officer approached the defendant in his patrol car and activated his blue emergency lights. Under the facts of this case, a seizure occurred regardless of whether the vehicle was already stopped at the time the officer approached. We also uphold the trial court's determination that the officer did not have reasonable suspicion to justify the stop. Therefore, the trial court correctly granted the defendant's motion to suppress the evidence obtained as a result of the stop. The decision of the Court of Criminal Appeals is reversed, and the decision of the trial court suppressing the evidence is reinstated.

The costs of this appeal are taxed to the State of Tennessee.