IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 28, 2011 Session

## STATE OF TENNESSEE v. ROBERT LEE VANDERGRIFF, JR.

**Direct Appeal from the Criminal Court for Union County**
**No. 3790     E. Shayne Sexton, Judge**

**No. E2010-02560-CCA-R3-CD - Filed June 28, 2012**

The defendant, Robert Lee Vandergriff, Jr., was convicted of driving while intoxicated, a Class A misdemeanor, by a Union County jury. He was sentenced to a term of eleven months and twenty-nine days, all of which was suspended but for eight days service in the county jail. On appeal, the defendant's single contention of error is that the trial court erred by failing to grant his motion to suppress. Specifically, he asserts this decision was error because he was seized without reasonable suspicion. Following review of the record, we affirm the denial of the motion to suppress.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., joined. JERRY L. SMITH, J., not participating.

Bradley L. Henry, Knoxville, Tennessee, for the appellant, Robert Lee Vandergriff, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William Paul Phillips, District Attorney General; and LaTasha Wassom, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The defendant's conviction arose from his encounter with Officer Kenny Crider after the defendant stopped his truck in the middle of a highway. Around 9 p.m., on January 2, 2009, Officer Crider was traveling north on Highway 33. As he traveled, he observed that a state trooper and a van were sitting in a parking lot. When he returned his eyes to the road, Officer Crider was forced to "slam on his brakes" to avoid hitting the defendant's truck,

which was parked in a "no pass" zone on the two-lane highway. After bringing his vehicle to a stop, Officer Crider activated his blue lights in order to make other cars aware of the presence of his and the defendant's vehicle. He took this action strictly as a safety precaution, as traffic in the area was moderate. Officer Crider had no suspicion that a crime had been or was about to be committed.

Officer Crider and the defendant both exited their respective vehicles and began walking toward each other. He noticed that the defendant was unsteady on his feet and was "unbalanced." Before Officer Crider could ask what was going on, the defendant asked Officer Crider why he had stopped him. Officer Crider informed him that he had in fact not stopped him, as the defendant's vehicle had been stationary when he approached. The defendant informed Officer Crider that he had been involved in an accident during which someone had "sideswiped" the side mirror on his truck before leaving the scene. Officer Crider did observe that the mirror was missing from the truck but did not see any other evidence of an accident having occurred at the location.

During their subsequent conversation, Officer Crider noticed that the defendant still remained unsteady on his feet. Despite instructions from the officer to lean on the patrol car, the defendant kept attempting to tie his shoe, almost falling over several times in the process. The defendant did not appear to comprehend the instructions given by Officer Crider. Other officers, including the state trooper Officer Crider had observed in the parking lot, soon arrived on the scene. The vehicles were then moved to the side of the road, and two officers began directing the traffic in the area.

Because of his observations, Officer Crider eventually asked the defendant about his condition. The defendant informed him that he had a back injury and had taken prescribed hydrocodone. He stated that he had taken four of the pills within four hours. Because of concern for the defendant's safety, Officer Crider administered alternate sobriety tests on which the defendant performed poorly. Based upon his unsteadiness, confusion, and poor performance on the tests, the defendant was arrested for driving under the influence.

Based upon these acts, the defendant was indicted by a Union County grand jury for: (1) driving under the influence; (2) violation of the implied consent law; and (3) failure to comply with the financial responsibility law. Prior to trial, the defendant filed a motion to suppress the evidence, arguing that Officer Crider did not have reasonable suspicion to effectuate a seizure of the defendant's person. According to the defendant, the seizure occurred upon activation of the blue lights. The trial court denied the motion, finding that no seizure had occurred, and the case proceeded to trial. Following a jury trial, the defendant was convicted of driving under the influence and sentenced to eleven months and twenty-nine days. The court further ordered that the sentence was to be suspended to unsupervised

probation after service of eight days in the county jail. Following the denial of the defendant's motion for new trial, he filed the instant timely appeal.

**Analysis**

On appeal, the defendant raises the single issue of whether the trial court erred by denying his motion to suppress. His argument is based upon the premise that Officer Crider seized him, for Fourth Amendment purposes, by activating the blue lights on his patrol car without reasonable suspicion supported by specific and articulable facts to believe that criminal activity had or was about to occur. There is no dispute in the record that no reasonable suspicion existed in Officer Crider's mind when he activated the lights on his car, as he specifically testified to such, stating that he believed the truck had probably just broken down. As argued by the State, the issue in this case is in fact whether a seizure actually occurred at that point. The trial court found that the initial activation of the blue lights did not constitute a seizure, but rather only an exercise of Officer Crider's community caretaking function.

In reviewing a trial court's denial of a motion to suppress, this court must look to the evidence and facts accredited by the trial court which are most favorable to the State as the prevailing party. *State v. Daniel*, 12 S.W.3d 40, 423 (Tenn. 2000). In reviewing the trial court's determinations, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. Nevertheless, appellate courts will review the trial court's application of law to the facts purely *de novo*. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution protect citizens against unreasonable searches and seizures. Our supreme court has previously noted that, generally, "[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment." *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (citations omitted).

"[U]nder both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)). Accordingly, a trial court begins with the presumption that a warrantless search or seizure

is unreasonable, and the burden is on the State to demonstrate that one of the exceptions to the warrant requirement was applicable at the time of the search or seizure. *Id*.

"However, neither the Fourth Amendment nor Article I, section 7 limit all contact between police and citizens." *Daniel*, 12 S.W.3d at 424. The United States Supreme Court has long recognized that police officers may engage citizens in encounters unrelated to the detection and investigation of criminal conduct. *See Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). In doing so, officers operate in their so-called "community caretaking" capacity. *Id*. The constitutional protections against unreasonable searches and seizures "are implicated only when a police officer's interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen." *Daniel*, 12 S.W.3d at 424. Our courts have thus articulated three categories of police-citizen interaction and their corresponding evidentiary requirements: "(1) full-scale arrest, which must be supported by probable cause; (2) brief investigatory detention, which must be supported by reasonable suspicion of criminal activity; and (3) brief police-citizen encounter that requires no objective justification." *State v. Hanning*, 296 S.W.3d 44, 48 (Tenn. 2009) (citations omitted).

"Generally, an officer may approach an individual in a public place and ask questions without implicating constitutional protections, so long as a reasonable person would feel free to disregard the police and go about his business." *State v. Williams*, 185 S.W.3d 311, 315 (Tenn. 2005). More particularly, our supreme court has held that "'[a] police officer may approach a car parked in a public place and ask for driver identification and proof of vehicle registration, without any reasonable suspicion of illegal activity.'" *Id*. (quoting *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993)). The community caretaking interaction becomes a seizure, however, "'when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id*. at 316 (quoting *Terry v. Ohio*, 392 U.S. 1 (1968)). As the United States Supreme Court has articulated it, "a seizure occurs 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Id*. (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Factors to consider when determining this include: (1) the time, place and purpose of the encounter; (2) the words used by the officer; 3) the officer's tone of voice and general demeanor; (4) the officer's statements to others who were present during the encounter; (5) the threatening presence of several officers; (6) the display of a weapon by an officer; and (7) the physical touching of the person of the citizen. *Daniel*, 12 S.W.3d at 425-26. The analysis "is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Id*. at 426.

The defendant relies upon *Williams* to support his premise that any activation of blue lights behind a parked car is in fact a seizure of the person inside and must be supported by reasonable suspicion. The defendant is correct that the court in *Williams* did find that the

officer who had pulled up behind a parked vehicle on a roadway and activated his blue lights had in fact seized the person. *See Williams*, 185 S.W.3d at 318. However, *Williams* cannot be read to stand for the proposition that any activation of blue lights behind a parked car constitutes a seizure. The court went on to specifically note that "[n]ot all use of the emergency blue lights on a patrol car will constitute a show of authority resulting in the seizure of a person." *Id*. The court continued that "when officers act in their community caretaking function, they may want to activate their emergency equipment for their own safety and the safety of other motorist. *Id*. However, in *Williams*, because there was nothing "to indicate the officer was concerned that the defendant was in need of assistance" and because no other vehicles were in the area, the court concluded, under those circumstances that a seizure had in fact occurred and reasonable suspicion was required. *Id*.

Despite the defendant's argument to the contrary, the facts in the instant case are not analogous to those in *Williams*. Here, as found by the trial court, Officer Crider was acting within his community caretaker function, and this fact was evidenced by testimony in the record. Officer Crider testified that he activated his blue lights to alert other motorists to prevent them for slamming into his vehicle, as he had almost slammed into the defendant's parked truck. The activation was safety based and done out of concern for the defendant, himself, and other motorists on the roadway. Officer Crider specifically noted that traffic in the area was "moderate" at the time of the incident. It was not done as a show of authority directed at the defendant. Indeed, when Officer Crider exited the vehicle, he did not suspect that any criminal activity was occurring, rather he testified that he believed that the truck had simply broken down. He approached the defendant, who had also exited his vehicle, and inquired as to what had happened.

We conclude that the defendant has failed to establish that the evidence preponderates against the trial court's determination that the seizure of the defendant did not occur with the activation of Officer Crider's blue lights but, rather, only afterwards when he observed certain behavior by the defendant which led to a reasonable suspicion that he was under the influence. To hold otherwise would result in desecration of the caretaking duty that police officers have to the public. To expect this officer to nearly slam into a parked car on a public roadway after dark with moderate traffic in the area - and not allow him to stop and investigate following the activation of his blue lights for safety reasons - is not logical. Indeed, to not take that action could result in a violation of the officer's caretaking duty to other motorists to ensure their safety on the roadway. The defendant is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the denial of the motion to suppress is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE