IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 18, 2015 Session

**STATE OF TENNESSEE v. KENDALL MCKENZIE KIN EAYRS**

**Appeal from the Circuit Court for Sevier County**
**No. 18420-II      Richard R. Vance, Judge**

_____

**No. E2014-02072-CCA-R3-CD – Filed December 22, 2015**

_____

Following the denial of her motion to suppress, the Defendant-Appellant, Kendall McKenzie Kin Eayrs, entered a guilty plea to driving under the influence, reserving three certified questions of law challenging the legality of her stop. Because the trial court erred in denying the motion to suppress after holding that the officer had probable cause or reasonable suspicion to stop Eayrs's vehicle for being illegally parked in a turn lane, we reverse the judgment of the trial court, vacate Eayrs's guilty plea, and dismiss the indictment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Vacated**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court. JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., concurred in results only.

Bryan E. Delius and Bryce W. McKenzie, Sevierville, Tennessee, for the Defendant-Appellant, Kendall McKenzie Kin Eayrs.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; James B. Dunn, District Attorney General; and Gregory C. Eshbaugh, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On May 13, 2013, the Sevier County Grand Jury returned an indictment charging Eayrs with one count of driving under the influence (DUI), a Class A misdemeanor. See T.C.A. § 55-10-401. On September 27, 2013, Eayrs filed a motion to suppress evidence and dismiss her charge, alleging that the officer did not have probable cause for her warrantless arrest because the misdemeanor DUI offense did not occur in his presence.

On October 2, 2013, the State filed a response to this motion, arguing that the officer saw two subjects, a male and a female, "fighting or struggling" next to a stopped silver Honda before observing Eayrs in the driver's seat of the Honda. The State claimed that the officer had reasonable suspicion to seize Eayrs after witnessing the physical altercation outside of her car. It noted that during the officer's questioning, Eayrs admitted that she had consumed three pints of beer, and the officer observed that she had bloodshot eyes, slurred speech, and smelled of an alcoholic beverage. Eayrs then performed poorly on the field sobriety tests. The State asserted that because Eayrs was in physical control of the vehicle on a public highway, the DUI offense occurred in the officer's presence. It also asserted that the officer, after conducting his investigation, had sufficient probable cause to arrest Eayrs for DUI. For these reasons, the State argued that the motion to suppress and/or motion to dismiss should be denied.

Also on October 2, 2013, Eayrs filed an amended motion to suppress, arguing that all evidence resulting from the illegal stop should be suppressed and that her charge should be dismissed. Eayrs claimed that the officer lacked articulable reasonable suspicion or probable cause at the time of the stop. As support, she stated that she stopped her vehicle to allow her passengers to switch seats and that her actions did not violate any traffic offenses or laws. She also asserted that the officer's claim that he witnessed a physical altercation between her passengers was merely a "blatant attempt to cure an otherwise unconstitutional traffic stop." In anticipation of the State's argument that the officer's stop was permitted under the "community caretaker" function of law enforcement, Eayrs insisted that nothing about the stop indicated the need for assistance or the need for the officer to activate his lights for safety reasons. She claimed that under the circumstances of this case, the officer's activation of his blue lights behind her stopped vehicle was not a permissible exercise of his community caretaking function and constituted a seizure of her person that implicated constitutional protections.

**Motion to Suppress Hearing.** At the July 29, 2014 suppression hearing, Officer Brad Lowe of the Pigeon Forge Police Department testified that he was on duty at 12:44 a.m. on October 26, 2012, when he observed something unusual:

> I was coming off Community Center Drive approaching the Parkway. . . . As I was approaching the intersection, there was a truck turning . . . on to [sic] Community Center Drive from southbound on the Parkway. I see him turning. I look towards the Gatlinburg side of the Parkway. As I'm coming up to the red light at Community Center Drive and Parkway, I see two individuals and a door open on a car as they're— the car is parked in a turn lane that you can turn into the track or you can make a U-turn in front of Walden's Landing to go northbound if you were to make the U-turn. The car was facing southbound on the Parkway. The

two individuals were beside the car towards the rear of the car closest to the far left lane of the Parkway. The two individuals appeared to be in a physical altercation.

He said that these two individuals "looked like they had a hold of each other," and as he came to the red light, he watched them for ten to twelve seconds. Officer Lowe stated that it looked like they had a physical altercation before getting back into the stopped vehicle as he was turning. Based on these observations, he decided to investigate the matter.

Officer Lowe stated that the video camera in his patrol car was in good working order at the time of this incident and that he had reviewed the video recording of the stop. He said the recording accurately reflected his encounter with the individuals in the vehicle "[e]xcept for the part where I'm looking to the right, my camera is facing towards the front of my vehicle and I'm turning right onto the Parkway."

The video recording of the stop was played during the motion hearing. The beginning of the recording shows Officer Lowe following a right curve in the road as he approaches the intersection of Community Center Drive and the Parkway, which is also known as State Highway 73. As Officer Lowe gets closer to this intersection, an eighteen-wheeler truck, which was headed south on the Parkway, turns right onto Community Center Drive and passes Officer Lowe. Officer Lowe stops at the red light at the intersection of Community Center Drive and the Parkway. Based on the time depicted on the recording, Officer Lowe stops for approximately eight seconds at the red light. During this stop, the camera inside his patrol car is focused at the area directly in front of the vehicle, which includes the red light at the intersection, and Eayrs's vehicle is not visible. Officer Lowe then turns right heading southbound on the Parkway. Because of the bright lights from numerous businesses on either side of the highway, it is difficult to see what is happening outside Eayrs's car when it first comes into view. As Officer Lowe approaches Eayrs's vehicle, a two-door Honda, the passenger door is open. A female, later identified as Kerri Sorenson, appears to exit the passenger side of the vehicle at the time of 42:48. At 42:56, a male, later identified as Bradley Butler, exits the car from the passenger side and then climbs back inside the Honda just as Officer Lowe activates his blue lights. The female leans inside the car but does not enter the vehicle.

Officer Lowe stops his patrol vehicle, gets out, and immediately walks over to Sorenson, who is standing outside the passenger side of the Honda. He asks her, "What's going on?" Although some of Sorenson's response is unintelligible, she later clearly says that she was "switching spots" with Butler because he needed "a window and air." Officer Lowe asks if they have been at a bar because they "look like it," and Sorenson responds that they have been at a restaurant. Officer Lowe then walks to the driver's side

of the car and asks Eayrs if she has had anything to drink. Eayrs responds, "I have not." She explains that she and her passengers had been at a work dinner and one of her passengers needed a window because he was about to get ill, which is why she stopped her car.

Officer Lowe asks her to exit her vehicle and to get her identification. Eayrs hands him her driver's license and when she steps out of her car, Officer Lowe says, "So you haven't had any alcohol at all tonight?" Eayrs responds, "No, I'm . . ." Officer Lowe then interjects, "Are you sure about that, because you sound like, that's to me, that's a yes." Eayrs responds, "No seriously, I've been taking care of these two." Eayrs explains that they had been at the convention center for a Ducks Unlimited dinner before going to a brewery where they ate and her passengers had a couple of drinks. She says they were on their way back to east Knoxville. Officer Lowe then tells her that he smelled "a lot of alcohol" coming from her vehicle and now that she is standing outside her car he can still smell alcohol. He says he has an intoximeter in his vehicle and he can check her if she likes or otherwise, he can do a field sobriety test on her because he feels like she is "telling him a story about not drinking." He asks Eayrs to stand at the back of her vehicle. Officer Lowe asks another officer to watch Eayrs while he moves his car back to perform the field sobriety tests. Officer Lowe then exits his car and approaches Eayrs. He tells her that her words are "kind of running together," that he can smell alcohol coming from her, and that her eyes are "bloodshot, kind of watery," so he wants to check her. Then he says, "You're telling me that you've not had any alcohol to drink tonight?" Eayrs responds that she's had a "couple of beers." She explains that her eyes are bloodshot because her glasses broke two days prior and she does not usually wear contacts. Officer Lowe begins conducting the field sobriety tests in the turn lane where Eayrs's car and his patrol car are stopped. After Eayrs performs the tests, he places her under arrest for DUI.

As the video recording of the stop was playing during the motion hearing, Officer Lowe identified the two individuals who exited Eayrs's vehicle as Kerri Sorenson and Bradley Butler. Officer Lowe stated that he activated his blue lights as he pulled in behind Eayrs's car. He explained why the physical altercation between Butler and Sorenson did not appear on the video recording:

> I was facing the red light [and] I pull up to the stop bar. I'm looking at—
> prior to pulling up and stopping, I look down the road and see them outside
> their car, [they] appear to be in . . . an altercation. I stopped my vehicle and
> I continue to watch them to the right of my vehicle that my camera is facing
> toward.

Officer Lowe stated that he turned on his blue lights "[f]or the safety of [Sorenson] standing outside the vehicle and my safety while in the lane of traffic." He then began investigating a possible domestic assault.

Officer Lowe said he did not recall testifying in General Sessions Court that everything he observed the night of Eayrs's arrest was captured on the video recording from his patrol car. As he was stopped at the red light, Officer Lowe saw Sorenson and Butler moving back toward the vehicle and when he turned, everything he observed was captured on the video recording. He stated that once he turned on his blue lights, his camera activated to a point several seconds earlier, and the video recording showed Butler stepping out of the vehicle. Although he acknowledged that Eayrs's car was a two-door vehicle, which required a person in the back seat to lower the front seat before exiting the car, Officer Lowe asserted that Butler had already exited the car one time and had gotten back inside before exiting the car a second time as shown on the recording. He acknowledged that he did not state in his police report that he saw Sorenson and Butler having an altercation before they moved toward the vehicle to get back inside. When asked if he had documented seeing Sorenson and Butler get out of the vehicle, get back in, and then get out again, Officer Lowe stated that he would have to refer to his notes before answering that question.

At that point, the trial court interjected:

Gentlemen, I'm going to cut through it all. Regardless of whether he saw them out and get back in or in and getting out, the video clearly shows that this vehicle driven by this defendant was illegally parked in a turn lane constituting a traffic hazard and is a violation for parking in a turn lane for people getting in and out of a vehicle. So this officer had not only probable cause, but a duty to stop. He observed that violation which I see on the video. End of story. Motion denied.

When defense counsel stated that he had testimony from Sorenson and Butler that he wished to present, the court stated:

Doesn't make a bit of difference if they're the people that are in and out of the car. That vehicle is illegally parked in a turn lane in a lane of travel constituting a traffic hazard. This officer had a duty and obligation to stop and make an investigation. I don't know what else could be shown or disputed about that. Whether they were fighting or kissing makes no difference.

When defense counsel asked to make an offer of proof regarding Sorenson's and Butler's testimony, the court replied, "[There is] no point whatsoever because regardless of what they say [it] makes no difference. That car is illegally parked in the middle of the traveled portion of the highway, period." Defense counsel then stated, "[F]or the record, I have Bradley Butler here to testify and his testimony would be that he had not exited the vehicle prior to the officer turning his blue lights on and Kerri Sorenson who is on the video as well to testify to the same." The trial court stated that even if that was the testimony from those witnesses, it made no difference because Eayrs's vehicle "was illegally parked with people getting in and out of it in the middle of the highway." The court again denied the motion to suppress and to dismiss the charge.[1] The record shows that the trial court never identified the statute or ordinance on which it relied to deny the suppression motion.

Immediately after the trial court announced its ruling, defense counsel informed the court that the parties had reached an agreement, based on the denial of the motion, to "enter into a plea and reserve the issue for the Court of Criminal Appeals as to the legality of the stop." Defense counsel asked for additional time to enter the plea so that the appropriate documents could be prepared.

**Plea Submission Hearing.** At the September 22, 2014 plea submission hearing, defense counsel informed the court that Eayrs would be entering a guilty plea but would be reserving certified questions pursuant to Tennessee Rule of Criminal Procedure 37(b)(2). He added that he and the State had reviewed the language of the certified questions and had determined that they were dispositive of the case. Defense counsel stated that the certified questions were ready to file contemporaneously with the judgment of conviction. The State provided the details regarding the plea agreement, and Eayrs entered a guilty plea to DUI. The State stipulated the evidence it would have presented had the case gone to trial, and Eayrs acknowledged that she expected the State's witnesses to testify in accordance with this stipulation. The trial court accepted Eayrs's guilty plea and sentenced her pursuant to the plea agreement to a sentence of eleven months and twenty-nine days, which was suspended to probation after the service of forty-eight hours of incarceration. Defense counsel informed the court that he had several agreed orders that he would be filing on Eayrs's behalf that day. The judgment of conviction and the agreed order, which were both entered on September 22, 2014, reserved the following certified questions of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2):

---

[1] The transcript from the motion to suppress hearing reflects that the trial court denied this motion, although the appellate record contains no entry of an order denying the motion to suppress.

(1) Whether the Trial Court erred by holding that Officer Lowe had probable cause or reasonable suspicion to stop the Defendant's vehicle for being "illegally parked in a turn lane."

(2) Whether Officer Lowe had any reasonable suspicion to support the traffic stop of the Defendant when he observed no moving violations of the rules of the road.

(3) Whether Officer Lowe had reasonable suspicion to stop the Defendant's vehicle for suspected domestic assault.

Eayrs filed a timely notice of appeal on October 20, 2014.

## ANALYSIS

Eayrs argues that the trial court erred in holding that the officer had probable cause or reasonable suspicion to stop her for being "illegally parked in a turn lane," that the officer did not have reasonable suspicion to support his traffic stop of her when he observed no moving violations of the rules of the road, and that the officer did not have reasonable suspicion to stop her vehicle for suspected domestic assault. After reviewing the record, we conclude that Eayrs is entitled to a reversal of her conviction and a dismissal of the indictment in light of the first certified question.

Tennessee Rule of Criminal Procedure 37(b)(2)(A) allows for an appeal from any order or judgment on a conditional plea of guilty or nolo contendere if the defendant reserves, with the consent of the state and the court, the right to appeal a certified question of law that is dispositive of the case, so long as the following four requirements are met:

(i) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A).

Initially, we must consider whether this court has jurisdiction to review the certified questions of law given that the judgment of conviction does not reference the separate agreed order. The record shows that the judgment in this case was entered on September 22, 2014. The Special Conditions box of the judgment contains the following information relevant to the certified questions of law:

> Sentence is stayed pending appeal on following certified questions: 1. Whether the Trial Court erred by holding that Office Lowe had probable cause or reasonable suspicion to stop the Defendant's vehicle for being "illegally parked in a turn lane." 2. Whether Officer Lowe had any reasonable suspicion to support the traffic stop of the Defendant when he observed no moving violations of the rules of the road. 3. Whether Officer Lowe had reasonable suspicion to stop the Defendant's vehicle for suspected domestic assault.

The record also shows that a separate "Agreed Order Reserving Certified Questions of Law for Appellate Review pursuant to Tenn. R. Crim. P.37(b)(2)" was entered on September 22, 2014, the same date that the judgment of conviction was entered. This agreed order states that the trial court "expressly incorporates this order by referencing into the Judgment entered in this case as though the same had been fully and completely stated therein." The agreed order then restates the above certified questions of law and indicates that the trial court, the State, and the defendant consented to the reservation of the certified questions of law as a part of the plea agreement and believed that the certified questions were dispositive of the case. However, the judgment of conviction does not specifically incorporate this agreed order by reference.

The Tennessee Supreme Court clearly outlined the requirements for reserving a certified question of law in State v. Preston:

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where

-8-

questions of law involve the validity of searches and the admissibility of statements and confessions, etc., <u>the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question</u>, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to Tenn. R. Crim. P. 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

759 S.W.2d 647, 650 (Tenn. 1988) (emphasis added). As the Tennessee Supreme Court emphasized, "<u>Preston</u> puts the burden of reserving, articulating, and identifying the issue upon the defendant." <u>State v. Pendergrass</u>, 937 S.W.2d 834, 838 (Tenn. 1996). This court will not consider any issue beyond the scope of the certified question. <u>State v. Day</u>, 263 S.W.3d 891, 900 (Tenn. 2008).

In <u>State v. Armstrong</u>, 126 S.W.3d 908, 912 (Tenn. 2003), the Tennessee Supreme Court held that it had "never applied a substantial compliance standard to the <u>Preston</u> requirements[.]" Instead, it reiterated that the <u>Preston</u> requirements regarding Rule 37 were "'explicit and unambiguous.'" <u>Id.</u> (quoting <u>State v. Irwin</u>, 962 S.W.2d 477, 479 (Tenn. 1998); <u>Pendergrass</u>, 937 S.W.2d at 837).

However, in <u>Irwin</u> the Tennessee Supreme Court relaxed the <u>Preston</u> requirements slightly by allowing a certified question to be set out in an independent document, so long as the independent document is incorporated by reference into the judgment. <u>Irwin</u>, 962 S.W.2d at 479 (stating that a judgment may refer to, or incorporate, an independent document, thereby satisfying the requirements of <u>Preston</u>). The court later held that corrective orders are permissible when a certified question has been omitted from a judgment; however, such orders must be filed while the trial court retains jurisdiction. <u>See Armstrong</u>, 126 S.W.3d at 912-13. Once a notice of appeal is filed, the jurisdiction

becomes vested in the appellate court, and the trial court may not amend its judgment. Pendergrass, 937 S.W.2d at 837.

The transcripts from the suppression hearing and the guilty plea submission hearing clearly show that Eayrs intended to enter a guilty plea pursuant to Rule 37(b)(2)(A). In addition, the form waiving a jury trial and entering a guilty plea and the plea agreement form, which were also filed on September 22, 2014, both indicate that Eayrs was entering her guilty plea with the intent to reserve certified questions of law pursuant to Rule 37(b)(2) and that she was contemporaneously filing an Agreed Order reserving these certified questions. We note that the Tennessee Supreme Court has emphasized achieving "'the dual goals of avoiding technicality and expediting a just resolution of the case on its merits.'" State v. Byington, 284 S.W.3d 220, 223 (Tenn. 2009) (quoting State v. Housler, 167 S.W.3d 294, 296 (Tenn. 2005)). The agreed order follows the Preston requirements for certified questions of law, was signed by the both parties and the trial court, and was filed the same day the judgment in this case was entered. See Armstrong, 126 S.W.3d at 912 (concluding that a corrective nunc pro tunc order entered after the final judgment but prior to the filing of the notice of appeal and that complied with the requirements of Preston was sufficient to establish jurisdiction in this court even though the original judgment did not make reference to a certified question of law); State v. Bethany R. Mercer, No. E2009-00003-CCA-R3-CD, 2009 WL 4931344, at *2 (Tenn. Crim. App. Dec. 22, 2009) (concluding that a final order that satisfied the Preston requirements and was filed contemporaneously with the judgment of conviction was sufficient to properly reserve the certified question of law even though the judgment did not incorporate this final order by reference); State v. Paul Anthony Wright, No. W2001-02574-CCA-R3-CD, 2003 WL 1860526, at *5-6 (Tenn. Crim. App. Apr. 7, 2003) (holding that when a judgment of conviction does not comply with the Preston requirements, a contemporaneously filed separate order may be sufficient to cure the defects of the judgment even though the order is not referenced in the judgment form). Therefore, we conclude that the certified questions of law in this case were properly reserved even though the judgment of conviction did not incorporate by reference the contemporaneously filed agreed order. We note that the judgment did recite the certified questions.

Next, we must consider the merits of the three certified questions reserved. Eayrs argues that the trial court erred in holding that the officer had probable cause or reasonable suspicion to stop her for being "illegally parked in a turn lane," that the officer did not have any reasonable suspicion to support his traffic stop of her when he observed no moving violations of the rules of the road, and that the officer did not have reasonable suspicion to stop her vehicle for suspected domestic assault.

When reviewing a trial court's findings of fact and conclusions of law on a motion

to suppress evidence, this court is guided by the standard of review recognized in <u>State v. Odom</u>, 928 S.W.2d 18 (Tenn. 1996). Pursuant to this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." <u>Id.</u> at 23. The prevailing party in the trial court "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." <u>Id.</u> Moreover, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." <u>Id.</u> Despite the deference given to trial court's findings of fact, this court reviews the trial court's application of the law to the facts de novo with no presumption of correctness. <u>State v. Montgomery</u>, 462 S.W.3d 482, 486 (Tenn. 2015) (citing <u>State v. Walton</u>, 41 S.W.3d 75, 81 (Tenn. 2001)); <u>Day</u>, 263 S.W.3d at 900 (citing <u>State v. Williams</u>, 185 S.W.3d 311, 315 (Tenn. 2006); <u>State v. Yeargan</u>, 958 S.W.2d 626, 629 (Tenn. 1997)).

As we previously noted, one of the requirements for a certified question pursuant to Rule 37(b)(2) is that "the defendant, the state, and the trial court are of the opinion that the certified question of law is dispositive of the case." Tenn. R. Crim. P. 37(b)(2)(A)(iv). A question is dispositive of the case "'when the appellate court must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" <u>State v. Dailey</u>, 235 S.W.3d 131, 134 (Tenn. 2007) (quoting <u>Walton</u>, 41 S.W.3d at 96) (internal quotation marks omitted); <u>see</u> <u>State v. Wilkes</u>, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). "A question is never dispositive when we might reverse and remand[.]" <u>Wilkes</u>, 684 S.W.2d at 667.

In this case, the parties and the trial court agreed that all three certified questions were dispositive of the case. However, it is well-established that this court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" <u>Dailey</u>, 235 S.W.3d at 134-35 (quoting <u>State v. Thompson</u>, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)); <u>Preston</u>, 759 S.W.2d at 651. Instead, this court "must make an independent determination that the certified question is dispositive." <u>Id.</u> (citing <u>Preston</u>, 759 S.W.2d at 651). Therefore, the appropriate inquiry is whether "'<u>the record on appeal</u> demonstrates how [the certified] question is dispositive of the case.'" <u>Id.</u> (quoting <u>Preston</u>, 759 S.W.2d at 651). This court will not accept jurisdiction when the certified question of law is not dispositive of the case. <u>Walton</u>, 41 S.W.3d at 96.

In the first certified question, Eayrs argues that the trial court erred in holding that the arresting officer had probable cause or reasonable suspicion to stop her for being "illegally parked in a turn lane." We previously recognized that no order denying the motion to suppress was included in the appellate record. At the suppression hearing, the

trial court held that regardless of whether Officer Lowe "saw them out and get back in or in and getting out, the video clearly show[ed] that this vehicle driven by this defendant was illegally parked in a turn lane constituting a traffic hazard[.]" Consequently, the trial court held that Officer Lowe "had not only probable cause, but a duty to stop." When defense counsel attempted to make an offer of proof by having Sorenson and Butler testify, the court replied: "[There is] no point whatsoever because regardless of what they say [it] makes no difference. That car is illegally parked in the middle of the traveled portion of the highway, period." Although the trial court was adamant that a violation of the law had occurred, it never identified the statute or ordinance that Eayrs apparently violated, and a specific statute or ordinance was never referenced by either party. The State argues, and we agree, that a trial court cannot sua sponte take judicial notice of a municipal ordinance.[2] See Tenn. R. Evid. 202(b)(3) (stating that "[u]pon reasonable notice to adverse parties, a party may request that the court take, and the court may take, judicial notice of . . . all duly enacted ordinances of municipalities or other governmental subdivisions"); State v. Chearis, 995 S.W.2d 641, 643 (Tenn. Crim. App. 1999) (noting that pursuant to Rule 202(b)(3), neither the trial court nor the appellate court could take judicial notice of a municipal ordinance). In this case, the trial court effectively cut short the proof at the suppression hearing, thereby precluding the development of issues related to the motion. It then reached a decision to deny the motion without identifying the particular statute or ordinance on which it relied and without allowing argument as to whether a violation of that statute or ordinance made the stop in this case legal.

In considering this issue, we distinguish this case from State v. Jon Michael Johnson, No. M2014-01834-CCA-R3-CD, 2015 WL 6164009, at *5 (Tenn. Crim. App. Oct. 21, 2015), which held that the certified question was not dispositive of the case because the trial court's ruling neither admitted nor excluded the evidence in question. In Eayrs's case, the trial court clearly ruled that the evidence stemming from the stop was admissible even though the court did not identify the statute or ordinance that Eayrs apparently violated. The record does not provide any guidance as to the law the trial court believed Eayrs violated, and we cannot speculate as to which law or ordinance the trial court was referring. Although the trial court held that the Officer Lowe had probable cause to stop Eayrs because she was parked in a turn lane on a highway, Officer Lowe never testified that he made the stop because of a traffic violation; instead, he testified that he stopped Eayrs's vehicle based on an alleged domestic assault between her passengers. Because the record does not establish the basis for the trial court's denial of the motion, we are constrained to conclude that the trial court erred in denying the motion to suppress. Accordingly, the trial court's judgment is reversed. Because a certified

---

[2] The State notes that Pigeon Forge, the city in which this stop occurred, "has a municipal ordinance that prohibits parking in or within 15 feet of an intersection." See PIGEON FORGE, TENN., CODE § 15-604 (2015).

question must be dispositive of the case and because we agree that Eayrs's first certified question is dispositive, the charge against Eayrs is dismissed.

In the event of further appellate review, we will also address the remaining certified questions. The second certified question of law concerns whether the officer had any reasonable suspicion to support the traffic stop of Eayrs when he observed no moving violations of the rules of the road. The transcript from the suppression hearing shows that Officer Lowe never testified that he observed any moving or non-moving traffic violations; instead, he stated that he initiated the stop of Eayrs based on an alleged domestic assault between her passengers. When reviewing a certified question of law, this court is "limited to those [issues] passed upon by the trial judge[.]" See Preston, 759 S.W.2d at 650. Because the issue of whether the officer had reasonable suspicion to stop Eayrs when he observed no moving violations was not passed upon by the trial court at the suppression hearing, we conclude that this certified question is not dispositive of the case.

The third certified question, whether the officer had reasonable suspicion to stop Eayrs's vehicle for suspected domestic assault, is also not dispositive of the case. Here, the trial court declined to rule on whether Officer Lowe had reasonable suspicion to stop Eayrs's vehicle for suspected domestic assault. Although Officer Lowe testified that he approached Eayrs's vehicle because of an alleged domestic assault between Butler and Sorenson outside the car, the video recording is devoid of any evidence that a domestic assault occurred. Instead, Eayrs, Butler, and Sorenson all stated in the recording that Eayrs stopped her car because Butler was about to be ill and needed switch seats. At the suppression hearing, defense counsel attempted to make an offer of proof before asserting that Butler and Sorenson would testify that Butler had not exited Eayrs's vehicle before Officer Lowe activated his blue lights. Because the trial court did not "pass" upon the issue raised in the third certified question, we conclude that this question also is not dispositive of the case.

## CONCLUSION

In light of the foregoing and the record as a whole, the judgment of the trial court is reversed, Eayrs's guilty plea is vacated, and the indictment is dismissed.

_____
CAMILLE R. McMULLEN, JUDGE

-13-