# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 17, 2013

## STATE OF TENNESSEE v. THOMAS G. MCCONNELL

**Appeal from the Circuit Court for Williamson County**
**No. II-CR075042      Timothy Easter, Judge**

_____

**No. M2012-02238-CCA-R3-CD - Filed May 8, 2013**

_____

The defendant, Thomas G. McConnell, appeals a certified question of law from the Williamson County Circuit Court, where he pleaded guilty to driving under the influence of an intoxicant ("DUI"). The reserved certified question challenges on constitutional grounds a police officer's basis for stopping his vehicle. The State concedes that the stop of the defendant's vehicle violated his constitutional protection from unreasonable seizure and advocates reversal of the defendant's conviction. Because we agree with the parties that the stop of the defendant's vehicle was not supported by reasonable suspicion, we reverse the judgment of the trial court and dismiss the charge against the defendant.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Venus Niner, Franklin, Tennessee, for the appellant, Thomas G. McConnell.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Kim R. Helper, District Attorney General; and Kelley Lawrence, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Following his July 2010 indictment for second offense DUI, the defendant pleaded guilty on February 23, 2011, to that charge and reserved for his first appeal pursuant to Tennessee Rule of Criminal Procedure 37(b) the following certified question of law: "Whether the motion to suppress should have been granted because the stop of the defendant's vehicle was unlawful." *See State v. Thomas G. McConnell*, No. M2011-

00675-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Nashville, Dec. 23, 2011). This court dismissed the first appeal, concluding that the question presented was overly broad and did not, therefore, comply with the terms of Rule 37. *Id.* In April 2012, the defendant filed a successful petition for post-conviction relief in the trial court.

Following the grant of post-conviction relief, the defendant again pleaded guilty to second offense DUI and again reserved pursuant to Rule 37 the following question of law:

> Whether the trial court erred in denying [the defendant's] motion to suppress as, at the time the officer conducted the warrantless seizure of the defendant's moving vehicle, no exception to the warrant requirement existed, in that, there was no probable cause or reasonable suspicion of criminal activity, and no consensual encounter.

Discerning that the question was properly framed and reserved pursuant to Tennessee Rule of Criminal Procedure 37(b), we examine the defendant's claim.

The only proof offered at the hearing on the defendant's motion to suppress was the testimony of Officer Charlie Richards. Officer Richards testified that he was traveling east on Highway 96 when he observed "brake lights sitting at a flashing yellow light." Officer Richards said that the lights drew his attention because of the lack of traffic. He testified that as he approached the vehicle, which had remained stationary for "several seconds, ample time to move on," he saw "a driver in the driver's seat motionless." Officer Richards conceded that the driver "was not completely slumped over the wheel, which would be more obvious of being passed out." He said that he could not see the driver's hands, "which would indicate . . . they are possibly either in his lap, maybe on the bottom of the steering wheel, but not like most normal drivers do." According to Officer Richards the delay at the flashing yellow light combined with the driver's "sitting there motionless" piqued his "curiosity," leading to a decision to "pull this guy over and check on his welfare and safety." He said that as he attempted to "angle [his] car behind [the defendant's] vehicle," the driver pulled away.

Officer Richards testified that the driver proceeded through the intersection and that, at that point, Officer Richards called in "the tag and location to try to affect [sic] a traffic stop, and then [he] hit [his] emergency equipment." Officer Richards acknowledged that "[t]he minute that [the defendant] started to go [Officer Richards] . . . began to call that out." Officer Richards insisted that it was the defendant's being stopped at the flashing yellow light that gave him cause for concern, explaining that it was "not normal of the

-2-

motoring public to sit that long." He also noted the late hour, 1:30 a.m., stating that "[t]hey roll up the carpet at 10:00" in Franklin. He said that the fact that the car began moving again did not alter his belief that a welfare check was necessary because the driver "could still be sick, he could still be drunk, he could still be hurt, . . . there could still be something wrong with him."

At the conclusion of the hearing, the trial court concluded that Officer Richards "had articulable and reasonable suspicion that would make his stop of the defendant's vehicle a valid stop in order for him to conduct a welfare check and to make a determination if there was a violation of the law being committed by this defendant." The court cited "[t]he conduct of the defendant's car sitting at a flashing yellow light a long period of time" and the defendant's remaining "motionless . . . in the driver[′s] seat of the vehicle" as supporting a finding that the officer had reasonable suspicion to stop the vehicle. The court, therefore, denied the defendant's motion to suppress.

On appeal, the defendant contends, and the State concedes, that the trial court erred by denying the defendant's motion because the stop of the defendant's vehicle was not supported by reasonable suspicion.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. *Odom*, 928 S.W.2d at 23; *see also* Tenn. R. App. P. 13(d). As in all cases on appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). We review the trial court's conclusions of law under a de novo standard without according any presumption of correctness to those conclusions. *See, e.g.*, *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). We review the issue in the present appeal with these standards in mind.

Because stopping an automobile without a warrant and detaining its occupants unquestionably constitutes a seizure, *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), the State in the present situation had the burden of demonstrating the applicability of an exception to the warrant requirement, s*ee, e.g.*, *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (temporary detention of an individual during a traffic stop constitutes seizure that implicates the protection of both the state and federal constitutions); *State v. Keith*, 978

S.W.2d 861, 865 (Tenn. 1998). The authority of a police officer to stop a citizen's vehicle is circumscribed by constitutional constraints. Police officers are constitutionally permitted to conduct a brief investigatory stop supported by specific and articulable facts leading to reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 20-23 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2002). Whether reasonable suspicion existed in a particular case is a fact-intensive, but objective, analysis. *State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003). The likelihood of criminal activity that is required for reasonable suspicion is not as great as that required for probable cause and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A court must consider the totality of the circumstances in evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. *State v. Hord*, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002). The totality of the circumstances embraces considerations of the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. *See State v. Pulley*, 863 S.W.2d 29, 34 (Tenn. 1993). The objective facts on which an officer relies may include his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992).

Particularly relevant to the issue presented here is the supreme court's recent opinion in *State v. James David Moats*. In that case, an Etowah Police Department Officer observed Moats sitting in a parked car in the parking lot of a grocery store at 2:00 a.m. *See State v. James David Moats*, No. E2010-02013-SC-R11-CD, slip op. at 2 (Tenn. Mar. 22, 2013). Upon observing the truck in the same location five minutes later, the officer parked "behind the truck, activated her blue lights, and called in the license plate number." *Id.* During a brief conversation with the defendant, the officer observed an open beer in the cup holder and noticed that Moats "appeared to be 'disoriented, very slow to speak, very sleepy acting.'" *Id.* Moats eventually failed field sobriety tests and was placed under arrest for DUI. On appeal, the supreme court reversed Moats's conviction, concluding that "the circumstances here demonstrate that the officer was not acting within a community caretaking role and did not have reasonable suspicion or probable cause to seize" Moats. Pertinent to this case, the court held:

> Although the activation of blue lights on a police vehicle ordinarily triggers a stop or seizure, thereby implicating constitutional protections, the totality of the circumstances must be considered to determine whether the police officer was acting within a community caretaking role, which is a concept separate and distinct from the investigation of possible criminal activity.

-4-

As a general rule, if the activation of blue lights is not used as a show of authority directed at a particular person, the officer is acting within the community caretaking function and need not support his or her actions with reasonable suspicion or probable cause.

*Id.*, slip op. 18.

Here, simply no evidence existed to support a finding that Officer Richards had reasonable suspicion to believe that the defendant was committing a crime. According to Officer Richards, the defendant stopped his vehicle for "several seconds" at a flashing yellow light before proceeding through the intersection. The defendant's actions did not violate the rules of travel and did not endanger other motorists. Indeed, the defendant's was the only vehicle other than Officer Richards' that was present on the roadway.

Moreover, the evidence did not establish that Officer Richards stopped the defendant's vehicle as an exercise of community caretaking. Although the officer indicated that his purpose in stopping the defendant's vehicle was to perform a "welfare check," the record clearly establishes that the activation of the officer's emergency equipment was a show of authority directed at the defendant designed to force the defendant to stop his car. Other than the defendant's remaining motionless during the time that his car was stopped at the flashing yellow light, no evidence of "an accident or other peril" existed. *See State v. Williams*, 185 S.W.3d 311, 318 (Tenn. 2006). As was the case in *Williams*, "the defendant's vehicle was the only vehicle in the area, so the use of the blue lights was directed solely at the defendant." *Id.* The officer's expression of concern that the defendant might be ill does not alter our conclusion that Officer Richards was not operating in a community caretaking function because, as our supreme court explained, "the litmus test is the objective belief of a reasonable person in the position of the defendant, not that of the officer." *Id.*

In summary, we agree with the parties that the trial court erred by denying the defendant's motion to suppress because the evidence did not establish that Officer Richards had reasonable suspicion to stop the defendant's vehicle or that the officer was acting in a community caretaking role. Accordingly, the judgment of the trial court is reversed. Because the nature of this appeal requires that the issue is dispositive of the case and because we agree that it is, the charge against the defendant is dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE