# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 25, 2013 Session

## STATE OF TENNESSEE v. EUGENE O. DALE

**Appeal from the Criminal Court for Hamilton County**
**No. 269938     Barry A. Steelman, Judge**

---

**No. E2012-02418-CCA-R3-CD - Filed August 19, 2013**

---

Appellant, Eugene O. Dale, pleaded guilty to sexual exploitation of a minor, where the number of materials possessed was greater than fifty and less than one hundred, a Class C felony, subject to a reserved certified question of law that challenged the trial court's denial of appellant's motion to suppress evidence. The trial court imposed the agreed-upon sentence of eight years with a release eligibility of thirty-five percent. On appeal, appellant argues that the warrant authorizing the search of his computer was not supported by probable cause because the affidavit for the search warrant relied upon unconstitutionally obtained information. Following our review of the parties' arguments, the record, and the applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

James A. H. Bell and Edward L. Holt, Jr., Knoxville, Tennessee, for the appellant, Eugene O. Dale.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; William H. Cox, III, District Attorney General; and Charles D. Minor, Leslie Ann Longshore, and Boyd Patterson, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## I. Facts

In November 2007, appellant took his computer to the computer department at Staples for repair. He left the computer at Staples after signing a work order requesting that the computer technicians discover the source of the viruses or spyware on the computer. While working on appellant's computer, a Staples computer technician, Joshua Westover, discovered what he believed to be child pornography on appellant's computer. A Staples employee contacted the police, and Chattanooga Police Officer Charles Darling viewed the images at Staples and confiscated the computer. Pursuant to a search warrant obtained by Hamilton County Sheriff's Department Detective James Usry, the Tennessee Bureau of Investigation ("TBI") examined appellant's computer and found over fifty images of identifiable child pornography. Subsequently, the Hamilton County grand jury returned a presentment charging appellant with sexual exploitation of a minor, where the number of materials possessed was greater than one hundred, which is a Class B felony under Tennessee Code Annotated section 39-17-1003.

Appellant filed a motion to suppress the evidence discovered as a result of two separate searches of his computer. In the motion, he argued that the Staples computer technician who discovered the illegal images was acting as an agent of the government, which, if true, would render the technician's examination of appellant's computer a search under search and seizure law. Appellant argued in the alternative that should the trial court rule that the technician's examination was permissible as a private party search, the police officer's search of the computer prior to seizing it exceeded the scope of the private party search. Appellant contended that the affidavit in support of the search warrant relied on information obtained from the police officer's illegal search, and without that information, there could not be a showing of probable cause to support the issuance of a search warrant.

At the suppression hearing, Joshua Westover testified that in November 2007, he was working as a computer technician at Staples. He was nineteen years old at the time, and all of his computer training had been done through Staples. He agreed that his ability to identify child pornography would be the capability of any ordinary person, as he had not received any specific training in that regard. Mr. Westover explained that Staples' policy regarding suspect images was that the computer technician would notify a manager. The manager would call "corporate," who would work with the manager to determine the next step.

Mr. Westover testified that the instance underlying this case was the first and only time he saw suspect images on a client's computer that led to police involvement. He said that the department's lead technician was the person who interacted with appellant. Mr. Westover did not recall appellant giving the lead technician any limitations about what they could review on the computer. The lead technician prepared a work order that Mr. Westover interpreted as meaning that he needed to locate the virus on appellant's computer and find

out why it had a virus in November 2007 when, in August 2007, it had undergone a "system restore," which involved returning the computer to its factory defaults, and had an anti-virus program installed. Mr. Westover ran a program on the computer called SUPERAntiSpyware Pro that locates viruses and spyware and gives a detailed description of the location of infected files. The program showed Mr. Westover that the virus was located in "My Documents" in a folder labeled "PVT." Mr. Westover opened the "PVT" folder and saw "thumbnails," which he defined as "preview[s] of what the file looks like." He said that "all the pictures [in the folder] were listed" with the thumbnails. Mr. Westover explained that the files in question were "allocated," meaning that the user had to save them and place them in the folder. He testified that after he reviewed the folder, he minimized the window and called a manager. He showed the folder to his manager, who called "corporate" and law enforcement.

When Officer Darling arrived, Mr. Westover told him that he had seen what he assumed to be child pornography on appellant's computer. When asked whether Officer Darling asked Mr. Westover to show him all of the images, he replied, "[The images] were already exposed, but yes." Mr. Westover testified that Officer Darling informed him that he was looking for "one specific type of image" that portrayed a person who was "clearly underage and [also portrayed] sexual penetration" in order to identify an image as child pornography. Officer Darling found images that met his criteria, and he asked Mr. Westover additional questions about the file. Officer Darling wanted to know whether the images had been taken by a camera and downloaded onto the computer or downloaded from websites, but Mr. Westover was not able to make that determination. In addition, Officer Darling wanted to know when the images were downloaded, and Mr. Westover determined that the images were downloaded after appellant had the computer's system restored in August 2007. Mr. Westover testified that some time later, he gave a written statement to Detective Usry.

On cross-examination, Mr. Westover testified that the "PVT" folder was created two days before appellant brought his computer to Staples. He explained that the files in the folder would have been intentionally placed there. Mr. Westover said that when he opened the "PVT" folder, the thumbnails showed females between the ages of five and thirteen, and all of the images were "sexual." He explained that the images showed "see-through bathing suits, oral sex, penetration sex, [and] just nude images." Mr. Westover testified that he did not "stare at the pictures long enough to . . . look at every image" but that he looked long enough "[t]o recognize that it was child porn."

On re-direct examination, Mr. Westover said that he looked at the dates of the files by changing the folder from showing the images as thumbnails to showing a list of the images. The list included the properties of the files.

Chattanooga Police Officer Charles Darling testified that on November 17, 2007, he

went to Staples to investigate a report that child pornography had been found on a computer. Officer Darling asked Mr. Westover to show him what he had discovered on the computer, and Officer Darling testified that the "[p]ictures . . . looked like explicit sexual pictures of child pornography." Officer Darling could not recall whether he asked Mr. Westover any questions, but he said that he did not ask to look at any specific picture. He said that he looked at the pictures rather than merely confiscating the computer because he wanted to verify that the pictures were there as reported.

On cross-examination, Officer Darling testified that "the first couple of photos [that Mr. Westover showed him] were not what [he] would consider child pornography," so he asked Mr. Westover to show him the photographs that he had seen. Officer Darling explained that he would not have confiscated the computer if there were only pictures of scantily clad children. Mr. Westover showed him "one or two more" photographs.

Hamilton County Sheriff's Department Detective James Usry testified that on January 2, 2008, he received a message that the Chattanooga Police Department had in its possession a computer with child pornography on it, and he was asked to investigate. He took possession of the computer from the police department. He also obtained written statements from Mr. Westover and his manager. Detective Usry contacted the district attorney's office for assistance in drafting a search warrant. He applied for and obtained a search warrant for appellant's computer. Detective Usry took appellant's computer to the TBI crime lab and had the search warrant executed. He testified that he never turned on the computer himself.

On cross-examination, Detective Usry testified that when he had Mr. Westover write down his statement, he did not ask Mr. Westover to distinguish between what he saw on his own and what he saw with the police officer.

Following the hearing, the trial court denied appellant's motion to suppress. Thereafter, appellant pleaded guilty to sexual exploitation of a minor, where the number of materials possessed was greater than fifty but less than one hundred, a Class C felony. *See* Tenn. Code Ann. § 39-17-1003. The trial court imposed the agreed-upon sentence of eight years with a release eligibility of thirty-five percent. Pursuant to the plea agreement, appellant reserved a question of law challenging the trial court's denial of his motion to suppress, and he presented the question of law in five parts:

I. Did [appellant] have a reasonable expectation of privacy in the contents of his computer?

II. Did [appellant] relinquish his reasonable expectation of privacy in the contents of his computer or grant Staples common authority over the computer,

-4-

when [appellant] delivered that computer to Staples for repair?

III. Did the search conducted by Officer Darling improperly exceed the scope of the original private search conducted by Westover?

IV. Did Detective Usry's Affidavit for Search Warrant rely upon an impermissible amount of information regarding the search conducted by Joshua Westover and Officer Darling to establish probable cause, and if so, would such reliance necessitate the suppression of the evidence seized pursuant to the search of [appellant]'s computer as authorized by the search warrant?

V. Did Detective Usry's Affidavit for Search Warrant establish sufficient probable cause to support the issuance of the search warrant?

## II. Analysis

### A. Certified Question

Rule 3(b)(2) of the Tennessee Rules of Appellate Procedure permits a defendant to plead guilty while reserving the right to appeal a certified question of law that is dispositive of the case. In doing so, he must also comply with the requirements of Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure. Following our review of the record, we conclude that appellant has properly certified a question of law.[1]

### B. Motion to Suppress

This court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise. *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008) (citing *State v. Williams*, 185 S.W.3d 311, 314 (Tenn. 2006)). On appeal, "[t]he prevailing party in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Id.* (citing *Williams*, 185 S.W.3d at 314-15; *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). However, the trial court's application of the law to the facts is a question of law that we review de novo. *Id.* (citing *Williams*, 185 S.W.3d at 315; *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)).

---

[1] On appeal, the State presented an argument that independent incriminating evidence, specifically the testimony of Joshua Westover, rendered appellant's certified question of law non-dispositive. However, our review of the record indicates that the certified question of law also challenges this evidence.

"Both the state and federal constitutions protect against unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered is subject to suppression." *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012). "Exceptions to the warrant requirement include searches incident to arrest, plain view, exigent circumstances, and others, such as the consent to search." *State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010). Neither the federal nor the state constitution prohibit governmental intrusion without a reasonable expectation of privacy. *Id.* at 730. Therefore, the first inquiry that must be made when determining the constitutionality of a search and/or seizure is whether an appellant had a reasonable expectation of privacy. *Id.*

In this case, appellant placed the offensive images in a folder labeled "PVT," which he argues means "Private." He further argues that this evinces his subjective expectation of privacy. However, he handed his computer and its password over to the employees of Staples with directions to find out why the computer had a virus. There is no evidence in the record that he made any attempt to restrict access to any information on his computer. Mr. Westover discovered the offensive images in the course of executing appellant's work order. Officer Darling confiscated the computer after Mr. Westover showed him the images.

Appellant argues that he retained his expectation of privacy in the files located in the "PVT" folder based on *U.S. v. Barth*, 26 F. Supp. 2d 929 (W.D. Tex. 1998). In that case, a computer technician, who happened to also serve as a confidential informant to the Federal Bureau of Investigation ("FBI"), found child pornography on a client's computer in the course of a repair and reported the findings to an FBI agent. *Barth*, 26 F. Supp. 2d at 932. The technician later searched the computer specifically to find more child pornography. *Id.* at 933. The district court ruled that the defendant's expectation of privacy was not extinguished by allowing the technician access to the files because he "gave the hard drive to [the technician] for the limited purpose of repairing a problem unrelated to specific files." *Id.* at 937. The instant case is factually distinguishable from *Barth* because appellant gave his computer to Staples to repair a problem that originated with the specific files containing child pornography, although the origin of the virus was clearly unknown to him. However, even if we were persuaded that appellant's expectation of privacy was not extinguished entirely by his actions in leaving his computer in the control of Staples' employees for repair, appellant's reliance on *Barth* does not fully support his argument because the district court reasoned that the technician's examination of the computer constituted a private party search not subject to Fourth Amendment protections. *See id.* at 934-35. We note that the district court ruled that the subsequent searches of the defendant's computer exceeded the scope of the original private party search, but, as discussed below, that is not the situation in the case *sub judice*. *See id.*

The application of the principles of search and seizure law lead us to conclude that the trial court properly denied appellant's motion to suppress. To begin, we are not persuaded

that appellant had a reasonable expectation of privacy in his computer once he gave the computer to Staples under the circumstances previously listed. A person has a reasonable expectation of privacy when (1) the individual has "an actual, subjective expectation of privacy," and (2) "society is willing to view the individual's subjective expectation of privacy as reasonable and justifiable under the circumstances." *State v. Munn*, 56 S.W.3d 486, 494 (Tenn. 2001) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). In this case, appellant's conduct in requesting the work and giving Staples his computer's password suggests that he did not have a subjective expectation of privacy; however, he arguably attempted to maintain an expectation of privacy by labeling a folder, "PVT." Nevertheless, it has long been recognized that a person does not have a reasonable expectation of privacy when he or she voluntarily turns over information to third parties. *Smith*, 442 U.S. at 743-44. Therefore, we conclude that under these circumstances, society would not be willing to recognize appellant's expectation of privacy as reasonable and justifiable.

In addition, it is a principle of search and seizure law that a search by a private individual is not subject to a Fourth Amendment analysis unless the individual is actually acting as a government agent. *See U.S. v. Jacobsen*, 446 U.S. 109, 113 (1984). On appeal, appellant does not advance the argument that Mr. Westover was acting as a government agent. Mr. Westover's search was a private party search. Therefore, his initial examination of the computer falls outside of the purview of the constitutional analysis. *See id; see also U.S. v. Grimes*, 244 F.3d 375, 383 (5th Cir. 2001).

Appellant argues that Officer Darling's search of the computer was beyond the scope of the private party search because, he claims, Officer Darling and Mr. Westover enlarged images, looked at information Mr. Westover had not previously seen, and looked at more images than Mr. Westover saw initially. At the motion hearing, Mr. Westover described the images he saw on appellant's computer as depicting females, ages five to thirteen years old, some of whom were engaged in oral or penetrative sex. Mr. Westover testified that when he opened the folder, *all* of the images in the folder were "exposed" as thumbnails. Therefore, it did not exceed the scope of Mr. Westover's initial search for Officer Darling to look at enough images to ensure that the images were child pornography. While the testimony at the hearing did not establish whether Mr. Westover and Officer Darling actually enlarged the images or opened the images rather than merely viewing the thumbnails, any such action would not have exceeded the scope of the private party search. *See Jacobsen*, 466 U.S. at 121-23 (removing objects from a package previously opened by private party for a visual inspection by law enforcement did not exceed scope of private party search). Furthermore, at the point in time when Officer Darling saw what he believed to be child pornography on appellant's computer, the incriminating nature of the computer was readily apparent, and the computer was subject to seizure under the plain view doctrine. *See State v. Kenneth Wendland*, No. M2009-01150-CCA-R3-CD, 2011 WL 345846, at *5 (Tenn. Crim. App. Jan. 31, 2011) (Seizure of computer used to create counterfeit currency was lawful when its

incriminating nature was obvious to officers who were in the common area of defendant's home with consent of his co-habitant.). Therefore, neither Officer Darling's search of the computer nor his subsequent seizure of the computer violated the prohibition against unreasonable searches and seizures.

The last two parts of appellant's certified question address the affidavit prepared by Detective Usry in support of a search warrant. Appellant argues that Detective Usry relied on information from the allegedly illegal second search of appellant's computer, when Officer Darling and Mr. Westover looked at the computer together, in his affidavit. He further argues that without that information, the affidavit does not support a finding of probable cause. However, because we have concluded that Officer Darling's search of appellant's computer was proper, appellant's argument is without merit. Further, the trial court ruled that Detective Usry's affidavit matched the testimony presented at the motion hearing, and we agree. Therefore, appellant is without relief in this matter.

## CONCLUSION

Based on the parties' arguments, the record, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE