# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 17, 2016 Session

## STATE OF TENNESSEE v. TONYA LAVETTE CHRISTOPHER

### Appeal from the Criminal Court for Hamilton County
### No. 294102    Don W. Poole, Judge

---

### No. E2015-02038-CCA-R3-CD – Filed October 6, 2016

---

The Defendant, Tonya Lavette Christopher, pled guilty to driving under the influence (DUI), first offense. See Tenn. Code Ann. § 55-10-401. The Defendant's plea agreement preserved a certified question of law regarding the legality of the police encounter which preceded her arrest. Following our review, we conclude that the police officer's detention of the Defendant was justified upon reasonable suspicion of obstructing a roadway in violation of Tennessee Code Annotated section 39-17-307. Accordingly, the DUI judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., joined. JAMES CURWOOD WITT, JR., J., filed a separate concurring opinion.

Steven E. Smith, District Public Defender; and Coty Wamp, Assistant District Public Defender, for the appellant, Tonya Lavette Christopher.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Neal Pinkston, District Attorney General; and Bates W. Bryan, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

Following her August 30, 2014 arrest, a Hamilton County grand jury returned an indictment charging the Defendant with DUI and DUI per se in violation of Tennessee Code Annotated section 55-10-401. On June 18, 2015, the Defendant filed a motion to suppress evidence of her intoxication, arguing that her seizure was unlawful because the seizing officer did not have reasonable suspicion that a criminal offense had been or was

about to be committed. The trial court thereafter held a hearing on the motion on August 17, 2015, and the following evidence was presented.

Chattanooga Police Department ("CPD") Officer Hunter Morgan testified that, shortly after 1:00 a.m., on August 30, 2014, he was on patrol near the intersection of Nautical Way and Holiday Hills Circle—an area, that according to Ofc. Morgan, "tend[ed] to be a problem spot for a lot of gang members and various crimes." As he approached the intersection's stop sign, Ofc. Morgan observed, "[a]bout a hundred yards down the road,"[1] "a vehicle stopped in the middle of the road, direct middle, [with the] doors open," and the "lights were on." Ofc. Morgan went to assess "what was going on," by "ma[king] contact" with the vehicle and its occupants.

According to Ofc. Morgan, upon his approach, he was unable to "get around the vehicle" because "they were parked directly in the middle of road." He exited his patrol car and "made contact" with the driver, the Defendant. At first, Ofc. Morgan "was simply . . . just going to ask her to move," however, upon "immediately talking" with the Defendant, Ofc. Morgan saw "alcohol on [the Defendant's] person, observed alcohol in the floorboard of the front seat, [and] smelled it." He asked the Defendant to step out of the vehicle, but when she attempted to comply with Ofc. Morgan's request, she was unable to "stand up straight" and had to "hold[] on to the car." He also smelled an odor of alcohol "about" the Defendant. Ofc. Morgan then administered field sobriety tests, which the Defendant performed unsatisfactorily. The Defendant agreed to submit to a blood test, and the results showed a blood alcohol concentration of 0.209 percent.

On cross-examination, Ofc. Morgan acknowledged that this was his first DUI stop. When Ofc. Morgan initially observed the Defendant's vehicle, he "was on a hill" and "saw her vehicle down about halfway down the hill." Furthermore, he "saw someone standing on the outside of" the car, recollecting that the person "was standing on the back passenger['s] side door[,]" although he could not say for certain. Thereafter, he "stopped behind" the Defendant's car, but he could not recall, due to the passage of time, whether he activated his vehicle's blue lights. He opined that he did not.

Ofc. Morgan stated specifically that he stopped the Defendant because she "was obstructing the roadway," and "[he] couldn't get around [her car]." Although he could not remember which specific doors of the vehicle were open, he did recall with some confidence that the engine was running, that "somebody was standing up," and that a male was present. He also confirmed that this was a residential area, that the streets were

---

[1] On cross-examination, Ofc. Morgan said he was only twenty to thirty yards away. The trial judge later asked about this discrepancy, and Ofc. Morgan stated that he could not recall the precise distance with any certainty but that it was "[p]robably" thirty to sixty yards.

not "lined for traffic[,]" that there were no other cars in the area, and that his patrol car's video equipment was not working at the time of the stop.

Hugo Ruiz testified that he was an investigator for the public defender's office and that he assisted with the Defendant's case. Mr. Ruiz confirmed that the address of 7700 Nautical Way was listed on the affidavit of complaint, and photographs he took of the intersection at Nautical Way and Holiday Hills Circle were admitted as exhibits. One photograph depicted the street signs at the intersection, showing the 7700 block of Nautical Way. The roadway "[a]t that intersection" measured twenty-seven feet and six inches, according to Mr. Ruiz. The "street width" of Holiday Hills Circle was twenty-seven feet and five inches. Mr. Ruiz testified that four and one-half cars, all being approximately six-feet wide like the Ford Taurus he was driving, could fit "touching side-by-side" within the roadway. Based upon his measurements, Mr. Ruiz opined that a car could have passed on either side of another car "parked smack dab in the middle of either Nautical Way or Holiday Hills[.]"

Mr. June Wells, testifying as a defense witness, said that he worked with the Defendant's boyfriend, that the Defendant's boyfriend was giving him a ride home on August 30, 2014, and that they stopped by the house that the Defendant's boyfriend shared with the Defendant so that they could switch cars. Mr. Wells believed the Defendant and her boyfriend resided in a duplex on Nautical Way.

When the Defendant's boyfriend went inside, Mr. Wells moved to the passenger seat of the couple's other vehicle. However, it was the Defendant who returned to the car and got into the driver's seat, not the Defendant's boyfriend as Mr. Wells had expected, because the couple had apparently gotten into an argument. They pulled out of the driveway, and Mr. Wells asked the Defendant if everything was okay. According to Mr. Wells, the Defendant stopped the vehicle and "pulled over to the side" of the roadway so that they could talk about what was going on. Mr. Wells opened his door and placed his feet on the ground outside of the vehicle, and a conversation between the two ensued. According to Mr. Wells, the car was close enough to the side of the road that Mr. Wells was "playing in the dirt and gravel with [his] feet" and the passenger's side door "swung over the grass."

Mr. Wells testified that they had only gotten about "one or two houses away" from the Defendant's home when the Defendant stopped the car. They sat there talking for about five minutes before Ofc. Morgan pulled in behind the vehicle and activated his patrol car's blue lights. Mr. Wells opined on cross-examination that the Defendant did not appear intoxicated, that the Defendant "looked normal[,]" that the Defendant did not have "[a]ny odor of alcohol about her at all[,]" and that he did not notice anything out of the ordinary until Ofc. Morgan "found the bottle" in the Defendant's vehicle.

The defense recalled Ofc. Morgan. Ofc. Morgan clarified that the Defendant's car was parked on Holiday Hills. He stated that he listed the "block range" of 7700 Nautical Way on the affidavit of complaint and that the stop occurred approximately twenty feet away from the intersection of Nautical Way and Holiday Hills.

Following the conclusion of proof, the trial court took the matter under advisement. By order dated September 16, 2015, the trial court denied the Defendant's suppression motion. The trial court first determined that the Defendant was seized when Ofc. Morgan pulled in behind the Defendant and activated his blue lights, noting that Ofc. Morgan was unable to contradict Mr. Wells's testimony that the patrol car's blue lights had been activated and that the State did not dispute "the point of seizure." However, the trial court then went on to accredit Ofc. Morgan's testimony "regarding the [D]efendant's vehicle's location in the middle of the road." Addressing the Defendant's argument that, even if her vehicle were in the middle of road, Ofc. Morgan still had room to pass, the trial court accredited Mr. Ruiz's testimony "regarding the width of the road, twenty-seven-and-one-half feet, and the width of his vehicle, six feet[.]" However, the trial court continued, Mr. Ruiz's testimony

> alone, without evidence regarding the width of the [D]efendant's vehicle with an open door and the width of [Ofc.] Morgan's patrol vehicle and without more evidence regarding the precise location and activity of the person outside of the [D]efendant's vehicle, does not give the [c]ourt sufficient reason to question [Ofc.] Morgan's testimony regarding the insufficiency of the clearance[.]
>
> . . . [D]epending on the location and activity of the person outside the vehicle, on one side less [sic], obstruction is not solely a matter of width. Presumably, an animal on a road can obstruct the road, if not because the animal is wide, because the animal's movements are unpredictable. Perhaps uncertainty about the movement of the [D]efendant's vehicle or its occupants was another reason for [Ofc.] Morgan's assessment of the sufficiency of the clearance.

Finally, the trial court disagreed with the Defendant's contention that, "even if she did obstruct the road, it was obvious that the obstruction was momentary[,]" reasoning that Mr. Wells's testimony illustrated that it was "not necessarily obvious that a vehicle with an open door and person outside it is ready to move."

Subsequently, on October 13, 2015, the Defendant pled guilty to one count of DUI, and in exchange, she received a sentence of eleven months and twenty-nine days to

be served on unsupervised probation after seven days' incarceration.[2]  As part of her guilty plea, the Defendant properly preserved the following certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2):

> Whether the stop and seizure of the Defendant were based upon reasonable suspicion supported by specific and articulable facts that a criminal offense had been or was about to be committed[.]

The judgment form provided that both the State and the trial court consented to the reservation and were of the opinion that the certified question was dispositive of the case. The matter is now before this court for our review.

## ANALYSIS

Although this case comes to us on appeal as a certified question of law under Tennessee Rule of Criminal Procedure 37(b)(2), we review it under the same standard as an appeal from a judgment denying a motion to suppress.  See State v. Nicholson, 188 S.W.3d 649, 656 (Tenn. 2006).  The "trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise."  State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).  Likewise, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial court.  State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000) (citing Odom, 928 S.W.2d at 23).  Furthermore, although "[t]he party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence," Odom, 928 S.W.2d at 23, the burden remains on the State to prove that a warrantless search was constitutionally permissible.  Nicholson, 188 S.W.3d at 656-57; State v. Henning, 975 S.W.2d 290, 298 (Tenn. 1998).  Our review of the application of the law to the facts is de novo.  State v. Day, 263 S.W.3d 891, 900 (Tenn. 2008).

The Fourth Amendment to the Constitution of the United States, applicable to the states through the Fourteenth Amendment as recognized in Mapp v. Ohio, 367 U.S. 643, 650 (1961), provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

---

[2]  The Defendant failed to include a transcript of the guilty plea submission hearing in the appellate record.

Similarly, article I, section 7 of the Tennessee Constitution provides

> [t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Any warrantless search or seizure is presumed to be unreasonable and requires the State to prove by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998).

Historically, three categories of police-citizen interaction have been judicially designated: (1) full-scale arrest, which must be supported by probable cause, see Brown v. Illinois, 422 U.S. 590, 598 (1975); State v. Ferrante, 269 S.W.3d 908, 913 (Tenn. 2008); (2) brief investigatory detention, which must be supported by reasonable suspicion of criminal activity, see Terry v. Ohio, 392 U.S. 1, 27 (1968); State v. Williams, 185 S.W.3d 311, 315 (Tenn. 2006), abrogated in part by State v. Kenneth McCormick, --- S.W.3d ---, 2016 WL 2742841, at *7-8 (Tenn. May 10, 2016) (wherein our supreme court reconsidered Williams's treatment of the community caretaker exception in dealing with stopped vehicles); and (3) brief police-citizen encounter that requires no objective justification, see Florida v. Bostick, 501 U.S. 429, 434 (1991); State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000). The case before us involves a brief investigatory detention, and accordingly, we must determine whether at the time the Defendant was detained, Ofc. Morgan had reasonable suspicion that the Defendant had committed a crime.[3]

---

[3] We are constrained to note that the analysis of this issue would likely be impacted by our supreme court's recent opinion in McCormick, by providing an alternative basis for affirmance. In McCormick our supreme court expressly overruled State v. Moats, 403 S.W.3d 170, 190 (Tenn. 2013), which "confined the community caretaking doctrine to consensual police-citizen encounters[,]" holding, instead, that "the community caretaking doctrine 'is analytically distinct from consensual encounters and [may be] invoked to validate a search or seizure as reasonable' under the Fourth Amendment and article I, section 7 of the Tennessee Constitution." 2016 WL 2742841, at *7-8 (quoting People v. Luedemann, 857 N.E.2d 187, 198-99 (Ill. 2006)) (alteration in original). The McCormick court "emphasize[d] that the community caretaking doctrine 'is not relevant to determining whether police conduct amounted to a seizure in the first place.'" Id. at *8 (quoting Luedemann, 857 N.E.2d at 198-99). In so holding, our supreme court created a fourth category of interaction between law enforcement and private citizens. However, by the limited issue in the certified question, the Defendant challenged only the stop and seizure of her vehicle on the ground that Ofc. Morgan lacked reasonable suspicion that there was criminal activity taking place, i.e., that she was obstructing a roadway. This court cannot go beyond the precise issue presented, being "limited to consideration of the question preserved[,]" Day, 263 S.W.3d at 900, and therefore, we will not analyze the facts presented in this case under McCormick.

A police officer may make an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 329 U.S. at 20-21 (1968); Binette, 33 S.W.3d at 218. Furthermore, a police officer must have such a reasonable suspicion in order to stop a vehicle without a warrant. State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002). Reasonable suspicion is determined by an examination of the totality of the circumstances. Binette, 33 S.W.3d at 218. Circumstances relevant to an analysis of reasonable suspicion include "the officer's personal objective observations . . . [and any] [r]ational inferences and deductions that a trained officer may draw from the facts and circumstances known to him." State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997).

The State does not challenge the trial court's finding that the Defendant was seized when Ofc. Morgan pulled up behind the Defendant's car and activated his patrol vehicle's blue lights. We have previously noted that a seizure or detention occurs when "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Williams, 185 S.W.3d at 316 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). Ordinarily, when an officer turns on his blue lights, the officer has initiated a detention. See State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). However, in some instances, an officer's activation of the emergency blue lights will not constitute a detention, such as when the officer turns on the emergency lights for reasons of safety. See Williams, 185 S.W.3d at 318. In this case, the stop occurred in a residential area during the early morning hours and no other cars were present at the time. The parties have agreed that the Defendant was detained when, with his blue lights flashing, Ofc. Morgan pulled his patrol car in directly behind the Defendant's vehicle, and we are constrained to agree. See id. (concluding that, because there was nothing "to indicate the officer was concerned that the defendant was in need of assistance," and because no other vehicles were in the area, a seizure had in fact occurred).

Next, we must next determine whether the detention was justified by reasonable suspicion of criminal activity. In determining whether an investigatory detention is based upon reasonable suspicion, we engage in a "fact-intensive and objective analysis," reviewing the record for "specific and articulable facts, that the defendant had committed, or was about to commit, a criminal offense." See Williams, 185 S.W.3d at 318-19. Reasonable suspicion must be supported by something more than the officer's "inchoate and unparticularized suspicion or 'hunch.'" Day, 263 S.W.3d at 902 (quoting Terry v. Ohio, 392 U.S. at 27). However, "'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause'" and "can arise from information that is less reliable than that required to show probable cause." Id. at 903 (quoting Pulley, 863 S.W.2d at 32).

Here, the trial court concluded that Ofc. Morgan had grounds to stop the Defendant because she was obstructing traffic. Tennessee Code Annotated section 39-17-307(a)(1) prohibits such behavior: It is an offense to

> [o]bstruct[]a highway, street, sidewalk, railway, waterway, elevator, aisle, or hallway to which the public, or a substantial portion of the public, has access; or any other place used for the passage of persons, vehicles or conveyances, whether the obstruction arises from the person's acts alone or from the person's acts and the acts of others[.]

"Obstruct" means "to render impassable or to render passage unreasonably inconvenient or potentially injurious to persons or property." Tenn. Code Ann. § 39-17-307(b).

The Defendant relies on Williams, 185 S.W.3d 311, for the proposition that Ofc. Morgan lacked reasonable suspicion to believe that the Defendant was obstructing a roadway in violation of Tennessee Code Annotated section 39-17-307, and accordingly, her brief investigatory detention which followed was unjustified. In support of her argument, the Defendant relies upon the following assertions: (1) "the evidence preponderates against the trial court's finding [accrediting Ofc. Morgan's testimony] that [the Defendant's] vehicle was in the middle of the road because Mr. Wells testified with certainty that his door was hanging over the grass"; (2) even if Ofc. Morgan's testimony is deemed credible regarding the location of the Defendant's car, "an officer's patrol vehicle or any other normal sized vehicle could have easily passed the Defendant's vehicle without inconvenience or potential injury"; and (3) the Defendant was not obstructing traffic because "there was no other traffic on the roadway at the time [Ofc. Morgan] stopped the Defendant." The State responds that "the [D]efendant's effort to discredit [Ofc.] Morgan is not an appropriate basis for relief on appeal." The State then provides two additional facts in support of the conclusion that the stop was justified by reasonable suspicion—the lateness of the hour and the vehicle's location in a high crime area—and asserts that the combination of these two facts, "on top of the proof of the traffic violation[,] renders the trial court's decision beyond rebuke under the binding precedent."[4]

In Williams, the Tennessee Supreme Court affirmed the trial court's conclusion that the officer did not have reasonable suspicion to make a stop under section 39-17-307

---

[4]   The lateness of the hour and a defendant's presence in a "high crime area" may be factors in determining reasonable suspicion; however, those factors alone do not establish reasonable suspicion. See State v. Lawson, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996). The only possible criminal activity afoot at the time Ofc. Morgan parked his patrol car behind the Defendant's vehicle was obstruction of a roadway. While Ofc. Morgan testified that the area was known as "a problem spot for a lot of gang members and various crimes," he conveyed no conduct from the Defendant that could have been construed as consistent with such activity.

for obstructing traffic. In that case, Chattanooga Police Department Officer Christopher Sims, while performing a routine patrol, saw the defendant's vehicle "stopped with the engine running, blocking one lane of a two-lane road," where there were no other vehicles present. Williams, 185 S.W.3d at 313. Observing that the trial court deduced from Ofc. Sims's testimony that the defendant was not "obstructing" a street within the definition of section 39-17-307, the Williams court affirmed the suppression of the evidence, reasoning,

> Because the evidence does not preponderate to the contrary, we uphold the trial court's findings of fact. In light of the fact that the defendant was not obstructing traffic, Officer Sims could have had no reasonable suspicion that a crime either had been committed, was being committed, or was going to be committed.

Id. at 319.

However, we agree with the trial court here that Williams is not on point under these facts. The Defendant urges us to conclude that the evidence preponderates against the trial court's finding accrediting Ofc. Morgan's testimony that the Defendant's vehicle was stopped in the middle of the road and asks us, instead, to accredit Mr. Wells's testimony that the car was pulled over on the side of the street. This is primarily an issue of credibility. Ofc. Morgan testified that he observed the Defendant's vehicle "stopped in the middle of the road, direct middle, [with the] doors open," and the "lights were on." Ofc. Morgan later stated that he was unable to "get around the vehicle" because it was "parked directly in the middle of road." On cross-examination, Ofc. Morgan again said that he stopped the Defendant because she "was obstructing the roadway," and "[he] couldn't get around [her car]." The trial court noted that much of Ofc. Morgan's and Mr. Wells's testimony disagreed but accredited Ofc. Morgan's that the Defendant was parked in the middle of the road, and we cannot conclude that the evidence preponderates otherwise. Once more, questions regarding witness credibility and resolution of conflicts in the evidence are matters entrusted to the trial court.

Alternatively, the Defendant submits that, even if the vehicle was in the middle of the road, Ofc. Morgan still had room to pass, and she was therefore not obstructing the road under the definition provided in section 39-17-307(b). Once more, "obstruct" is defined as "to render impassable or to render passage unreasonably inconvenient or potentially injurious to persons or property." (Emphasis added). The trial court first accredited Mr. Ruiz's testimony "regarding the width of the road" but then observed that Ofc. Morgan testified that the vehicle's door was open and that a person was present outside of the vehicle. The trial court determined, based upon these additional facts, that it lacked "sufficient reason to question [Ofc.] Morgan's testimony regarding the insufficiency of the clearance[,]" reasoning,

[D]epending on the location and activity of the person outside the vehicle, on one side less [sic], obstruction is not solely a matter of width. . . . Perhaps uncertainty about the movement of the [D]efendant's vehicle or its occupants was another reason for [Ofc.] Morgan's assessment of the sufficiency of the clearance.

Ofc. Morgan testified that he "saw someone standing on the outside of" the Defendant's car and that a door was open when he initially observed the vehicle. Although Ofc. Morgan could not remember which specific door(s) of the vehicle were open, he did recall with some confidence that the engine was running, that the vehcile's lights were on, that "somebody was standing up" outside of the car, and that a male passenger was present. Again, the trial court accredited Ofc. Morgan's testimony on these matters. We agree with the trial court that these additional factors distinguish this case from Williams and, accordingly, conclude that the trial court did not err in determining that the Defendant was obstructing the road under the statute's definition.

The Defendant additionally submits that that she was not obstructing traffic because there was no traffic on the road. Ofc. Morgan confirmed that this was a residential area, that the stop occurred during the early morning hours, that the street was not "lined for traffic[,]" and that there were no other cars in the area. Regardless, Williams does not require that other traffic be present in the area to constitute reasonable suspicion of a violation of section 39-17-307. In Williams, the officer's testimony was that it was a deserted, two-lane road and that the defendant was not blocking any traffic, other cars being able to pass safely. 185 S.W.3d at 319. Williams simply requires that a defendant be obstructing any potential traffic, which we have concluded occurred here. The fact that another motorist had not yet encountered the obstruction created by the Defendant does not inure to the Defendant's benefit. Consequently, we affirm the trial court's conclusion that Ofc. Morgan had reasonable suspicion to conduct an investigatory stop.

CONCLUSION

For the foregoing reasons, on the certified question presented, we hold that Ofc. Morgan's warrantless detention of the Defendant and her vehicle was valid because it was supported by reasonable suspicion that the Defendant had committed or was about to commit a crime. Accordingly, we affirm the judgment of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE

-10-